ETTA SCHREFFLER *et al.* Appellees, *vs.* BENJAMIN F. CHASE, Exr., *et al.* Appellants.

*Opinion filed June 29, 1910.*

1. EVIDENCE—*common law disqualification of husband as witness for or against wife.* At common law a husband could not be a witness for or against his wife as to any matter, nor could he, either during the marriage or after its termination by death or divorce, be a witness to testify to communications between them or to any fact or transaction the knowledge of which was obtained by means of the marriage relation.

2. SAME—*extent to which husband's common law disqualification as a witness has been removed.* The common law rule prohibiting a husband from testifying for or against his wife has been modified in Illinois by sections 1 and 5 of the Evidence act, but neither of those sections renders the husband a competent witness except in the cases enumerated in said section 5.

3. SAME—*prohibition of section 5 is not limited to admissions or conversations.* Section 5 of the Evidence act, which prohibits a husband or wife, in case the other be dead, from testifying to any admission or conversation of such other to the survivor or to third persons, does not remove the common law disqualification against testifying to any fact or transaction the knowledge of which was obtained by means of the marriage relation.

4. SAME—*divorced husband not competent to testify in a will case as to mental capacity of testatrix.* In a will contest case, where it is claimed the testatrix was of unsound mind, the divorced husband of the testatrix is not a competent witness to testify to acts of the testatrix, during the marriage relation, calculated to establish the fact that she was of unsound mind.

APPEAL from the Circuit Court of Kankakee county; the Hon. F. L. HOOPER, Judge, presiding.

W. R. HUNTER, for appellant St. Paul's Church; E. B. GOWER, for appellant Benjamin F. Chase:

The divorced husband of testatrix was not a competent witness to prove the acts of testatrix during the existence of the marriage relationship. *Waddams* v. *Humphrey,* 22 Ill. 661; *Reeves* v. *Herr,* 59 id. 81; *Griffeth* v. *Griffeth,* 162 id. 368; *Goelz* v. *Goelz,* 157 id. 33; *Gillespie* v. *Gil-*

*lespie,* 159 id. 84; *Donnan* v. *Donnan,* 236 id. 341; *Wickes* v. *Walden,* 228 id. 56; 1 Greenleaf on Evidence, sec. 254.

Communications between husband and wife may be made by acts, and it is not necessary that they be expressed by words. *Perry* v. *Randall,* 83 Ind. 143.

H. L. RICHARDSON, and COOPER & HOBBIE, for appellees:

The husband, in testifying in a suit against the estate of a deceased wife, is not testifying "for or against" the wife, so as to be within the inhibition of the first portion of section 5 of chapter 51 of our statutes. *Deniston* v. *Hoagland,* 67 Ill. 265; *Galbraith* v. *McLain,* 84 id. 379.

The latter part of section 5 of chapter 51 only inhibits the testimony of the spouse as to admissions and confessions, and does not extend to acts and conduct. *White* v. *Willard,* 232 Ill. 464; *Baker* v. *Baker,* 239 id. 82; *Donnan* v. *Donnan,* 236 id. 341.

It is not against public policy to permit the husband to testify to matters other than admissions or conversations. 1 Greenleaf on Evidence, (16th ed.) sec. 337; *Powell* v. *Powell,* 114 Ill. 329.

Mr. JUSTICE COOKE delivered the opinion of the court:

Etta Schreffler and Ulysses Schreffler, her husband, the appellees, filed their bill of complaint in the circuit court of Kankakee county to contest the validity of the will of Rosella C. Paine, deceased, on the ground of mental incapacity. An issue at law was made up whether the writing produced was the will of the deceased or not. The first jury to whom this issue was submitted failed to agree and the issue was submitted to another jury, resulting in a verdict finding that the writing produced was not the will of Rosella C. Paine, and that she was not of sound mind and memory at the time of executing said writing. The court

overruled appellants' motion for a new trial and entered a
decree setting aside the probate of the will and declaring
the purported will null and void. The defendants to the
bill have prosecuted an appeal to this court.

The instrument in question was executed by Rosella C.
Paine April 16, 1904, and by its terms all her property was,
subject to the payment of debts and funeral expenses, de-
vised and bequeathed to St. Paul's Episcopal Church of
Kankakee City, Illinois, one of the appellants. Benjamim
F. Chase, another of the appellants, was nominated as ex-
ecutor of the will. Rosella C. Paine died on December 23,
1907, and the will was admitted to probate by the county
court of Kankakee county on February 3, 1908. She left
her surviving appellee Etta Schreffler, her daughter, as her
only heir-at-law. Testatrix was married to Tim C. Dick-
inson about thirty-five years before her death, and on May
17, 1900, she obtained a divorce from him. She left an
estate consisting of a house and lot in the city of Kanka-
kee, valued at $5000, and about $1000 in notes and cash.

The evidence offered by appellants, if considered alone,
would establish beyond question the validity of the will and
the mental capacity of the testatrix. Appellees offered the
testimony of a large number of witnesses, many of whom
testified to facts and circumstances which were entirely
consistent with the sanity and mental capacity of Rosella
C. Paine, and which merely tended to prove that she be-
came angry upon slight provocation and had frequent quar-
rels with tenants of her property. Many of these witnesses
expressed no opinion regarding the mental condition of the
deceased. From the testimony of the witnesses, both for
appellants and for appellees, it appears that the daughter,
Etta Schreffler, had arrayed herself with her father in the
divorce proceedings instituted by her mother, and that there-
after the mother had refused to have anything to do with
her daughter.

Appellees called as a witness in their behalf Dickinson, the divorced husband of the testatrix, who, over the objection of appellants to his competency, was permitted to testify to the conduct of his wife as observed by him from the time of his marriage to her up to the time of the separation. He testified that within a year or two after the marriage she became subject to violent fits of anger about once a month, which increased in frequency after the birth of their daughter; that at such times she looked wild-eyed, made quick motions, jerked chairs around and slammed the doors after her; that on one occasion she attempted to attack him with a butcher knife and at other times with sticks of wood, and that on these occasions he forced her into a chair and held her there until her passion subsided; that she prepared no clothes for her child before its birth; that frequently, for periods extending from two days to two weeks, she refused to speak to him, and secluded herself in her room for periods of from one to two weeks and at one time for a period of three months; that at such times, although he had men working for and with him on the farm, she prepared no meals and refused to eat at the table with the other members of the family; that these periods of isolation increased during the latter part of their married life, recurring every two or three weeks; that when visitors or relatives of the family came to the house she frequently locked the door and refused to admit them; that she often refused to sit at the table during meals when guests were at the house, and at such times, after preparing the meals, went into another room or outdoors and paid no attention to the persons at the table; that the same thing frequently occurred when no one was present except members of the family; that she became very angry at the witness when death occurred among the stock on the farm; that during her fits of anger she frequently left the house and roamed through the fields and woods for hours at a time, and sometimes went to her mother's home at Kanka-

kee, where she would stay for a week or more and then
return to her home by hailing some neighbor and riding
home with him; that she locked the witness out of the
house a number of times and kept him out several days;
that from the daughter's birth until she left home, at the
age of twenty, he does not remember of ever seeing his
wife kiss or caress the daughter, and that on the final sepa-
ration the testatrix locked him out of the house and he did
not return.    In addition to the above testimony the witness
made a great many statements and testified to a number of
facts and conclusions which, upon motion by the appellants,
were stricken out by the court.    Most of these answers and
statements made in the presence of the jury and stricken
out by the court were of a nature much more prejudicial to
appellants' cause than those which were permitted to stand.

It is obvious that the testimony of this witness must
have been a material factor in the finding of the jury that
the testatrix was not of sound mind and memory at the
time of executing the will, and if such testimony was im-
properly admitted the decree based on such verdict cannot
be permitted to stand.    At common law a husband could
not be a witness for or against his wife as to any matter,
nor could he, either during the marriage or after its ter-
mination by death or divorce, be called as a witness to
testify to communications between them, or to any fact or
transaction the knowledge of which was obtained by means
of the marriage relation.    (*Reeves* v. *Herr,* 59 Ill. 81;
*Pyle* v. *Oustatt,* 92 id. 209; *Goelz* v. *Goelz,* 157 id. 33;
*Wickes* v. *Walden,* 228 id. 56; 1 Greenleaf on Evidence,
sec. 337.)    This rule of the common law prohibiting a hus-
band from testifying for or against his wife has been modi-
fied by sections 1 and 5 of the Evidence act of this State,
but neither of those sections renders the husband a compe-
tent witness except in the cases enumerated in the excep-
tions found in section 5 of the act.    (*Mitchinson* v. *Cross,*
58 Ill. 366.)    The testimony of Dickinson in this case does

not fall within any of those exceptions, because the exceptions only apply to cases where the husband or wife of the witness is a party to the suit.

It is urged, however, that section 5 of the Evidence act only prohibits a husband or wife, in case the other be dead, from testifying to any admission or conversation of such other made by him to her or by her to him or by either to third persons, and that as Dickinson was not asked to state, and did not state, any admission made by the wife or any conversation between himself and wife or between a third person and the testatrix, his testimony was competent. The fallacy of this argument lies in the fact that the statute does not create the disability. It existed at common law, and by reason thereof is a part of the law of this State until repealed by statute. The statute has expressly removed the disability imposed by the common law in certain cases, of which this is not one, and has expressly retained the common law disability with reference to admissions and conversations between the husband and wife, except in suits between the husband and wife, but it does not necessarily follow that the statute has removed the common law disability of the husband to testify to any fact or transaction, the knowledge of which was obtained by means of the marriage relation. That such disability still continues in this State has been recognized by this court since the enactment of section 5 of the Evidence act as now in force.

In *Griffeth* v. *Griffeth,* 162 Ill. 368, a bill was filed by the wife for a divorce on the ground of the impotency of the husband. The evidence of a former wife of the defendant, from whom he was divorced, was admitted, showing that she had lived with the defendant as his wife for a period of five weeks and that during that period he was impotent and was addicted to self-abuse, and that she had, while his wife, witnessed his acts of self-abuse. In holding that the evidence of the divorced wife was incompetent we said: "Whether the divorced wife's knowledge of her

husband's conduct in the respect here referred to came to her as the result of his admissions to her or of her conversations with him, or as the result merely of her own observation, it was acquired in the confidence of the marriage relation, and, therefore, her evidence in regard to it should have been excluded upon principles of public policy. The protecting seal of the law is placed upon all confidential communications between the husband and the wife, except so far as our statute has changed the rule. It makes no difference that the marriage relation no longer exists between them. 'Whatever has come to the knowledge of either by means of the hallowed confidence which that relation inspires cannot be afterwards divulged in testimony, even though the other party be no longer living.' (1 Greenleaf on Evidence, sec. 337.) Accordingly, in *Crose* v. *Rutledge,* 81 Ill. 266, we said (p. 268) : 'The defense offered the divorced wife of the plaintiff as a witness to prove a fact which must have come to her knowledge, from the very nature of the fact, during the existence of the marital relation. This testimony was properly excluded.—*Waddams* v. *Humphrey,* 22 Ill. 661.' "

Dickinson necessarily obtained his knowledge of the facts about which he testified by reason of the marriage relation which existed between him and the testatrix, and he cannot be permitted to divulge these facts as evidence of the insanity or mental incapacity of his former wife. We express no opinion upon the sufficiency of the remainder of the evidence offered by appellees to support the verdict and the decree, as the issue between the parties must be submitted to another jury.

The decree is reversed and the cause will be remanded to the circuit court for a new trial upon the issue at law whether the writing produced be the will of the testatrix or not.                    *Reversed and remanded.*