# Richmond

## WILKES' ADMINISTRATOR V. WILKES.

### January 15, 1914.

1. EVIDENCE—*Survivor of Transaction—Will as a Matter of Transaction.*—A will is the sole act of the testator, and its execution is not such a contract, matter or transaction as comes within the purview of section 3346 of the Code excluding the survivor of a contract or other transaction from testifying. A widow, therefore, is not excluded by said section from testifying as to the execution of the will of her late husband.

2. EVIDENCE—*Husband and Wife—Privileged Communications—Wills.*— Under the provisions of section 3346-a of the Code, neither husband nor wife can, without the consent of the other, be examined in any case as to *any communication* made by the one to the other while married, nor can such communication be revealed, without such consent, after the marriage relation ceases. The statute is founded on public policy and applies to "any communication" between them, of any nature, whether confidential or not, and it is immaterial by whom or for what purpose the husband or wife may be called as a witness, nor whether for or against each other. Conversations, therefore, between a husband and his wife as to the making of his will cannot be given in evidence by his widow, no matter by whom she is called as a witness.

3. WILLS—*Erasures—Presumption.*—An erasure of words in a holograph will is presumed to have been made by the testator, in the absence of proof to the contrary.

4. APPEAL AND ERROR—*Verdicts—Receiving Improper Testimony—When Harmless.*—The error of the trial court in improperly receiving evidence is harmless, where the verdict of the jury is supported by other sufficient evidence and was approved by the trial court.

Appeal from a decree of the Corporation Court of the city of Staunton. Decree for some of the defendants. One of the defendants appeals.

*Affirmed.*

The opinion states the case.

*Bumgardner & Bumgardner,* for the appellant.

*Landes & East, S. V. Kemp, H. D. Flood, F. C. Moon* and *Edward H. Moon,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

S. M. Wilkes, of Staunton, Va., departed this life on the 9th day of May, 1910, seized and possessed of considerable real and personal estate, leaving to survive him his widow, Nannie M. Wilkes, and as his only heir at law a son, Birl C. Wilkes, over the age of twenty-one years but of unsound mind. On May 28, 1910, a paper writing bearing date of the 11th day of March, 1910, purporting to be a holograph will left by the decedent, was produced in the corporation court of the city of Staunton by Nannie M. Wilkes, his widow, and the executrix named therein to act along with W. L. Brown, named as executor, and this paper was, in an *ex parte* proceeding, probated as the will of the decedent, and letters of administration granted to the executrix and executor therein named.

The whole of this testamentary paper, including the signature of the testator affixed thereto, was written with pencil and there appeared a line drawn through the clause reading as follows: "& finds it necessary;" and in the *ex parte* probate proceeding the will was admitted to record omitting said clause.

The paragraph of the will in which these words appeared, so far as it needs to be repeated here, reads as follows: "I desire that the said Mrs. Nannie M. Wilkes shall have in fee simple the residence . . . the store on Main street . . . together with the building adjoining . . . and in addition to this she is to have the rents from any

other properties I may own so long as she may live & finds it necessary (the words "& finds it necessary" having a single line with pencil indistinctly and irregularly drawn through them) for the support of herself and our afflicted son, Birl C. Wilkes . . ." This is an outline of my wishes, and if I should die before it is properly written or copied I want to be understood as my wishes in the matter, as Mrs. Wilkes and I have talked the matter over and fully agreed that the residence and Main st. property of Staunton, Va., above mentioned she willingly accepts as her one-third interest in my entire estate. . . ."

The collateral kin of the decedent, who are also beneficiaries under the paper writing purporting to be his will, instituted this suit under section 2544 of the Code, in which W. L. Brown, as executor, united, the bill charging that the words in question, "& finds it necessary," omitted from the said paper when recorded, were a part thereof and prayed an issue *devisavit vel non* for the purpose of having judicially determined whether or not any part of said paper, and if any, how much, be the will of said S. M. Wilkes, deceased.

Nannie M. Wilkes, the widow, in her own right and as executrix, answered the bill, and Birl C. Wilkes, the son, being of unsound mind, answered by A. S. Robertson, his guardian *ad litem,* and also as his committee, a former answer theretofore filed by his mother as his committee having been by leave of court withdrawn. The answer last filed for Birl C. Wilkes challenged the validity of the supposed testamentary paper, and asserted his right to the entire estate, subject only to the dower rights of his mother in the lands and her distributive interest in the personal estate, as sole child and heir at law of the decedent.

An order was entered in the cause making up and submitting the issue to a jury, duly empaneled to try the same, viz: "Whether the paper in question was in fact the true

last will and testament of S. M. Wilkes, deceased, and if so, were the words '& finds it necessary,' through which the line was drawn, a part of the same?"

The case was heard on oral testimony, depositions and documentary evidence, and the court having instructed the jury as to the law of the case, they rendered their verdict finding that said paper was the true last will of the decedent, but that the clause, "& finds it necessary," was no part thereof; whereupon the court entered its final order on May 4, 1912, approving the finding of the jury, probating the paper as the will of S. M. Wilkes, deceased, excepting and excluding the clause, "& finds it necessary."

Subsequent to the rendition of this final order, Birl C. Wilkes departed this life intestate, leaving to survive him his mother, Mrs. Nannie M. Wilkes, his only heir at law; and W. H. Hyer having qualified as administrator d. b. n. of his estate, applied for and obtained this appeal.

In the petition for the appeal there are a number of assignments of error relating, respectively, to the granting or refusal of instructions, and the refusal of the court to set aside the verdict of the jury on the ground that it is contrary to the law and the evidence; but the only question discussed in the petition or in the oral argument is whether or not the will in question is valid as a holograph will. Appellees, other than Nannie M. Wilkes, who are collateral kin of the testator and beneficiaries under his will, assign as cross-error the rulings of the trial court (1) in admitting certain testimony; (2) in giving over the objection of appellees certain instructions asked for by Nannie M. Wilkes; and (3) in overruling the objections of appellees to the competency of Nannie M. Wilkes to testify in this cause.

In the view we take of the case, it is not necessary to consider the errors assigned *seriatim*. The contest in the lower court was a three-sided one, the widow, Nannie M.

Wilkes, supporting the will, but insisting that the clause therein restricting her income from property not devised to her in fee simple was not a part of the will; the collateral kin, who are the residuary legatees, contending that there had never been a valid cancellation of the words, "& finds it necessary," and that those words remained a part of the will, thereby restricting the income to the widow and enlarging the provision made for them; and on behalf of the son, Birl C. Wilkes, it was contended by his committee and guardian *ad litem,* that the act of striking out these words, done by the hand of another and not that of the testator in the course of the preparation of the paper, was such as to destroy the holographic character of the will and produce intestacy.

The extended and learned argument of counsel for appellant that the act of striking out the words "& finds it necessary," in the testamentary writing in question was an act that destroyed the holographic character of the paper as a will and produced intestacy, proceeds upon the theory that Mrs. Wilkes was a competent witness to testify in this proceeding that she and not her husband, the testator, drew the line through said words. Her statement in substance is that her husband was preparing his will in their room and in her presence, and that before he completed the same, he handed the paper to her and asked her to read it and see if it suited her; that she took the paper, read it while he was temporarily out of the room, and when he returned he asked her how it suited her; that her reply was, in substance, that it was all right with the exception of the words "& finds it necessary," "and I have run the pencil through these words and struck them out;" or that she then took a pencil and with his sanction and by his direction herself drew a horizontal line through the words "& finds it necessary," and that the testator subsequently, with his own hand, completed the draft of the paper, signed it, and put it away.

The competency of Mrs. Wilkes as a witness was objected to on two grounds: (1) "That she was a party to the contract, matter and transaction which is the subject of investigation in this suit, and that as her husband, the other party thereto, was dead, she was incompetent to testify under section 3346-a of the Virginia Code;" (2) that the testimony which she was called upon to give consisted of communications made to her by Mr. Wilkes, her husband, and by her to him during coverture, and, therefore, under sub-section 3 of section 3346-a, she was incompetent to testify in this cause.

The trial court overruled the objection to Mrs. Wilkes as a witness, and she was allowed to testify, as above stated, to which ruling appellees duly excepted.

With respect to the first ground of objection to Mrs. Wilkes as a witness, we deem it only necessary to say that it has been recognized as a settled rule of law since the case of *Martz* v. *Martz,* 25 Gratt. (66 Va.) 361, that a will is the sole act of the testator and its execution is not such a contract or transaction as comes within the purview of the statute, now section 3346 of the Code, which is invoked to sustain the right to introduce Mrs. Wilkes as a witness adverse to the interest of Birl C. Wilkes. That statute has no application whatever to the case in judgment. Section 3346-a, which applied to and determined the competency of husband and wife as witnesses for or against each other, formerly used the words, "contract or other transaction which is the subject of investigation," while as the section now appears in the Code the words, "contract, *matter* or transaction which is the subject of investigation," are used; but this change in the statute, adding the word "matter," does not impair the force and effect of the decision in *Martz* v. *Martz, supra,* and therefore has no material bearing upon the issue in this case. The competency of Mrs. Wilkes to testify in the case is to be deter-

mined by sub-division 3 of section 3346-a, which provides:
"Neither husband nor wife shall, without the consent of the
other, be examined in any case as to any communication
made by the one to the other while married, nor shall either
of them be permitted to reveal in testimony after the mar-
riage relations cease any such communication made while
the marriage subsisted."

The language of the statute is as broad and comprehen-
sive as could have been used to express the intent of the
framers thereof. It is founded on public policy and ap-
plies to "any communication" between husband and wife,
no matter what its nature, whether confidential or not, its
language being that neither husband nor wife shall, with-
out the consent of the other, be examined *in any case* as to
*any communication* made by the one to the other, and it
would, therefore, seem too clear to admit of argument,
that it is a matter of no consequence by whom the husband
or the wife may be called as a witness or for what pur-
pose, whether for or against each other.

The will of S. M. Wilkes, deceased, had been previously
probated in *ex parte* proceedings on the motion of Mrs.
Wilkes, but there was raised a question whether the words
"and finds it necessary" were a part of the will as probated
or not, and it was to determine that question, and for
that purpose alone, that this suit was instituted.

Mrs. Wilkes' and Birl Wilkes' representatives both con-
tended that those words had in fact been cancelled by
the hand of Mrs. Wilkes and not by the testator himself,
but by his consent before the execution of the will, and
were not in fact a part thereof; it being further contended
on behalf of Birl Wilkes that if such were the fact, then
in law the will was not valid as a holograph will; while
the collateral kin and beneficiaries contended that those
words were not cancelled, but remained a part of the will.

At common law, Mrs. Wilkes would have been plainly
incompetent as a witness in the case, as husband and

wife were absolutely incompetent to testify for or against each other, and it is only by statute that this incompetency has been partially removed. In other States this incompetency or disability has been removed as to confidential communications, but our statute removing the disability excepts from its operation "any communication," and does not limit the exception to "confidential communications."

The facts testified to by Mrs. Wilkes, to prove which she was called as a witness, are communications which she says were made to her by her husband in respect to his will, which he was then drafting, or as to communications she made to him with reference to his will, or as to communications had between them as to the making of his will, etc. If these communications are not within the purview and meaning of the statute, it would be difficult indeed to determine where the line of demarcation is to be drawn. When the statute says "any" (which includes all) "communications" are excluded, unless this plain language and undoubted meaning of the statute is to be ignored, Mrs. Wilkes must be excluded as a witness in the case. We have here a case in which the witness derived her knowledge of the facts as to which she was called to testify from her relations to the testator. It cannot be conceived that such a topic, with respect to which she was called to and did testify, would have been the subject of discussion but for the existence of such relations between the parties. The purpose of the introduction of Mrs. Wilkes was to prove facts communicated to her by her husband with respect to the disposition of his property by will, which, if proven, would enlarge her interest in his estate and lessen that of the collateral kin named as remaindermen. This is not all: to admit her testimony as to communications between her and her husband concerning the disposition of his property by will

lays the only foundation for the contention that is made on this appeal—that S. M. Wilkes died intestate, and therefore his whole estate descended to his insane son and only child, upon whose death the same would become the property of the witness, Mrs. Wilkes, and that, too, in face of the fact that the will of the husband states that upon a discussion of the matter between him and his wife she was satisfied with the provision he had made for her.

In *Yeppla* v. *Minn. Tribune Co.*, 35 Minn. 310, 29 N. W. 127, the court in construing General Statute C-73, sec. 10, which provided that "neither husband nor wife can during marriage or afterwards be, without the consent of the other, examined as to any communication made by the one to the other during marriage," held that "this includes all private conversations between husband and wife, though on subjects not confidential in their nature."

The reason for the rule fixed by the statute is very clearly stated in the early case of *Robin and Others* v. *King*, 2 Leigh (29 Va.) 140, where the wife was held not to be competent to testify as to statements she heard her husband make in the presence of the family with no request to keep them secret, and even though the husband was not a party to the suit and though the husband was dead. In the opinion of the court it is said: "It is well settled that husband and wife cannot be witnesses for each other, because their interests are identical, nor against each other, for fear of creating distrust and sowing dissensions between them, and perhaps occasioning perjury. . . . It would also violate that confidence which from the nature of the relation ought to be regarded as sacred, and would be arming each of the parties with the means of offense, which might be used for very dangerous purposes. So important is this rule that the law will not suffer it to be broken by agreement; for in *Barker* v. *Dixie*, Rep. Temp. Hardw. 264, Lord Hardwick would not suffer a wife

to be examined against her husband, though he consented
that she might.

"And this rule is adhered to, though the marriage tie
be dissolved by the death of one of the parties, or by
divorce. (Citing cases.) It is very clear from these and
other cases that where either is a party the other is alto-
gether incompetent."

Statutes which remove merely the disqualification aris-
ing from interest do not remove the disqualification aris-
ing from the relation of husband and wife. 40 Cyc. 2210.
See the same authority at pp. 2356-2357.

In 10 Ency. of Evidence, at page 165, *et seq.*, the rule is
thus stated: "Neither husband nor wife can testify as to
any communications between them made during the exist-
ence of the marriage relation.

"Change of common law rule by making one spouse a
competent witness against the other does not affect the
rule against disclosure of marital communications. Nor
does the statute permitting a party to an action to call
his adversary as a witness.

"The rule is not based upon the common law fiction of
the identity of husband and wife, nor upon any actual
voluntary confidence reposed in one spouse by the other,
but upon the peculiar nature of the marriage relation.

"Whether a communication is to be considered as con-
fidential depends upon its character as well as upon the
relation of the parties. If the topic is such as would not
have been discussed by husband and wife but for the rela-
tion between them, communications on the subject are
privileged.

"But it has been held that all communications between
husband and wife are privileged, and the rule is not limited
to communications concerning subjects which are confi-
dential in their nature."

Among the cases cited by the author just quoted is
*Walker's Ex'or.* v. *Sanborn,* 46 Me. 470, where the court

says that communications between husband and wife are sacred, and adds: "The exclusion, on this latter ground, rests not upon the nature of the evidence, but upon the source or mode in which the knowledge is obtained by the husband or wife." See also *State* v. *Jolly,* 26 N. C. 110, 32 Am. Dec. 656, and *Stickney* v. *Stickney,* 131 U. S. 227, 9 Sup. Ct. 677, 33 L. Ed. 136, where a similar statute to ours was being dealt with.

In *Wall* v. *Dimmet,* 132 Ky. 747, 117 S. W. 299, it was held that a wife could not testify that her husband showed her certain letters and afterwards destroyed them.

In *Yeppla* v. *Minn. Tribune Co., supra,* the contention was made that the statute only applied to communications of a confidential nature, but the court said that the language of the statute would not admit of such limitations. "The word 'communication' is used (as in sub-div. 3 of sec. 3346-a, supra) without qualification, and any such limitation as that suggested would be extremely difficult of application; it would introduce a separate issue in each case as to whether or not the communication was of a confidential character. To enable the court to judge as to its character the communication would have to be disclosed, and so the very mischief committed which was designed to be prevented."

The same rule was followed in *Campbell* v. *Chance,* 12 R. I. 333, construing a statute which, after making husband and wife competent as witnesses, provided that "neither shall be permitted to give any testimony tending to criminate the other, or to disclose any communication made to him or her by the other during their marriage."

Speaking of a similar statute, the court in *Reeves* v. *Herr,* 59 Ill. 81, says: "We do not find from the authorities that this rule of exclusion is confined to subjects which are confidential in their nature, and we think it should apply whenever the wife is called upon to dis-

close any matter which came to her knowledge in consequence of the marriage relation."

A stronger case could not, in our view, be made than is made by the facts appearing in this record for the application of the rule prescribed by our statute, *supra,* construed in the light of the authorities construing similar statutes. These authorities are conclusive that Mrs. Wilkes was an incompetent witness to testify in the case, no matter by whom called; therefore, the evidence she was called on to give and was allowed to give should have been excluded.

With the testimony of Mrs. Wilkes out of the case, there is no evidence whatever to show how, when or by whom the mark by which it is claimed that the words "and finds it necessary" were cancelled was made, or whether intended to cancel or strike out these words as a part of the testamentary paper. It is clearly proven, in fact, not controverted, that the whole writing, including his signature, is in the handwriting of the testator, and quite naturally the witnesses examined on the subject were unable to say whether or not the mark through the words "and finds it necessary" were made by the same hand that wrote the balance of the paper and the signature thereto.

We have examined the original will, reaching the conclusion that the mark in question through the words "and finds it necessary" was intended and was sufficient to strike out those words as a part of the will, and in the absence of proof to the contrary it was to be presumed that the act of striking out those words by running the mark through them, or to a sufficient extent to indicate an intention to strike them out as a part of the will, was done by the testator's own hand.

The jury, responding to the issue submitted to them, having found by their verdict that all of the paper pur-

porting to be the last will and testament of S. M. Wilkes, exhibited to them, "with the exception of and excluding the words and characters therein, to-wit, 'and finds it necessary,' is the last will and testament of S. M. Wilkes," the errors of the trial court in admitting the testimony given by Mrs. Wilkes, and in instructing the jury that no matter how slight or faint the cancellation marks in question are, yet, if placed there by his direction or consent they were effectual to cancel the words in question, and that if the testator merely "directed" the words in question to be cancelled it would be sufficient to operate as a cancellation without actual cancellation in fact, were harmless errors.

The jury upon sufficient evidence, without that given by Mrs. Wilkes, having returned a finding in accordance with the views expressed in this opinion, which was approved by the trial court, it follows that the decree appealed from has to be affirmed.

*Affirmed.*