COURT OF APPEALS OF VIRGINIA


Present:  Judges Barrow, Koontz and Elder
Argued at Richmond, Virginia


JUANNITO H. EDWARDS,
  S/K/A JUANITTO H. EDWARDS
                                        OPINION BY
v.         Record No. 1942-93-1    JUDGE BERNARD G. BARROW[*]
                                        JUNE 6, 1995
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF YORK COUNTY
               Fred W. Bateman, Judge Designate


        Karen M. Vannan (Buxton, Lasris & Vannan, P.C.,
        on brief), for appellant.

        Michael T. Judge, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.



     This criminal appeal challenges the admissibility of the

testimony of the defendant's former wife concerning several

statements the defendant made to her and items she found among

the defendant's belongings during their marriage.  We hold that

the wife's testimony was not privileged under Code § 8.01-398

because it did not concern "any communication privately made"

between the defendant and his former wife.[1]

---

[*]Judge Bernard G. Barrow participated in the hearing and
decision of this case and prepared the opinion prior to his
death.

[1]We are not barred by Rule 5A:18 from considering the issues
raised by the defendant on appeal because the defendant's
objections were sufficiently preserved by his motion in limine,
objections at trial, and the trial court's assurance that defense
counsel "would not have to continue to make the same objection on
each and every one of the witnesses" because he had "made one
general objection which will follow him through the trial so long
as he wishes that to be the case."

The defendant was charged with first degree murder, abduction, robbery, and use of a firearm in connection with the death of a man who disappeared while demonstrating his Mercedes automobile which he was offering for sale. In response to a classified ad for the sale of the automobile, the victim's wife received a telephone call from a person who identified himself as J.C. Jiles and expressed interest in the car. The victim and his wife met "Jiles," a light-skinned black man wearing a long, black tweed coat, a yellow shirt and a red tie at the Omni Hotel at 7:00 p.m. The victim's wife testified at trial that the defendant was the person who had introduced himself as Jiles. After a test-drive, the defendant indicated that he would call the following day. Upon receiving a call from "Jiles" the next day, the victim left home to go to the Omni, carrying a wallet with a few credit cards and a small amount of money. He disappeared and his body was found a week later, shot in the chest. Two weeks later, the Mercedes was found. The victim's wallet was never recovered.

The defendant was married at the time of the offense, but divorced by the time of the trial. Before trial, the court denied the defendant's motion to exclude the wife's testimony pursuant to Code §§ 19.2-271.2 and 8.01-398. She testified that her husband was "looking for automobiles" and that he went to test-drive a "Mercedes, with an older couple" around 7:00 p.m. one evening during the same time period that the defendant met

the victim and the victim's wife. When he left that evening, he was wearing a pale yellow shirt, teal sweater vest, red tie, and a long, black tweed trench coat with leather lapels.

She further testified that the following evening, a friend of the defendant's came to her home and took her to the Omni, where she saw the car the defendant had been driving when she had last seen him. The defendant was not there, so the friend instructed the wife to page him. When the defendant called back, he told his wife to meet him and pick him up at a relative's house in Richmond. The defendant's aunt and uncle were expecting the wife, but the defendant was not there when she arrived. While waiting for her husband, the defendant's wife drove the uncle to a convenience store, and on her return, she saw the defendant driving a Mercedes with the license number FAV-725. She returned to the house and went to bed. The defendant arrived around 2:30 a.m., and the couple left at 4:00 a.m. In the car on the way home, the wife heard a radio report about a missing man and a missing car with the license plate number she had seen on the Mercedes the defendant had been driving.

Finally, the defendant's former wife testified that on a later evening, the defendant came home wearing his black coat and went upstairs for some time and returned, no longer wearing the coat. When the wife went upstairs alone later and looked in his belongings, she found a wallet containing the victim's driver's license and Price Club card. She did not tell the defendant she

had found them, and when she looked for the wallet the next day, she did not find it. The former wife testified that, because of her fear of the defendant, she did not contact the police until she saw a reenactment of the crime on "America's Most Wanted."

The defendant appeals the trial court's admission of the wife's testimony describing the defendant's attire on the evening of the victim's disappearance, his interest in purchasing a Mercedes and his plan to test-drive a Mercedes with an older couple, his instruction to her over the phone to meet him at a relative's house, and her discovery of a wallet containing the victim's driver's license and Price Club card among the defendant's belongings. We hold that the wife's testimony was properly admitted. The first three of these events, although communications between spouses, did not express or imply by their nature that they were intended to be "secret or confidential." The wife's discovery of the wallet was not a communication by the defendant to his wife.

"[N]either husband nor wife shall, without the consent of the other, be examined in any action as to any communication privately made by one to the other while married, . . . nor reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted." Code § 8.01-398(A). Such communications include "all information or knowledge privately imparted and made known by one spouse to the other by virtue of and in consequence of the marital relation

- 4 -

through conduct, acts, signs, and spoken or written words."
Menefee v. Commonwealth, 189 Va. 900, 912, 55 S.E.2d 9, 15
(1949).

The purpose of the privilege is to preserve the "continued
tranquility, integrity and confidence" of the marital relation,
shielded and protected by the "inviolate veil of the marital
sanctuary."  Id.  Thus, it does not shield any and every
communication or act, regardless of its nature, but "only
communications of a confidential nature," that is, "of a secret
nature between husband and wife."  Id. at 907, 55 S.E.2d at 13
(quoting Thomas v. First National Bank of Danville, 166 Va. 497,
511, 186 S.E. 77, 83 (1936).  Accord Stewart v. Commonwealth, 219
Va. 887, 893, 252 S.E.2d 329, 333 (1979) (noting that the
predecessor to Code § 8.01-398 shields confidential
communications).

Thus, admissibility depends "upon the nature of the
communication . . . whether it was intended to be secret or
confidential."  Thomas, 166 Va. at 511, 186 S.E. at 83.  One
indicator of whether a communication was made in confidence is
whether its content is disclosed to a third party.  See id.

The wife's description of the defendant's clothing, which he
displayed in public when he left the home, was not a confidential
communication.  We find no objective indicia of confidential
intent.  Further, it is reasonable to infer that clothing worn in

- 5 -

public was not intended to be kept private or confidential.[2] Therefore, the wife's testimony about the defendant's attire on the evening of the offense was properly admitted.

The wife's testimony about the defendant's interest in purchasing a Mercedes and his intent to test-drive a Mercedes with an older couple was also not the sort of communication a spouse would reasonably consider "of a secret nature between husband and wife." The information was not conveyed with an expression of confidentiality, nor did its content imply that it should be kept confidential. In fact, the defendant not only expressed his intent to the victim and his wife, but also arranged to meet them in a public place, further supporting a finding that this communication was not a marital "secret." Protecting such a communication is not necessary to preserve the "continued tranquility, integrity and confidence" of the marital relation.

The defendant's wife testified that the defendant instructed her over the phone to meet him at his relative's house. We do not consider such a communication "secret." Here again, we find no objective indicia of confidential intent. If anything, the defendant's actions indicate the opposite, since he instructed her to meet him at a place where other people would be present to witness the meeting. Therefore, the testimony was properly

---

[2] We are not establishing a per se rule about attire. Some acts, such as cross-dressing, or wearing bloody clothing, might be considered confidential communications.

admitted.

Finally, when the wife testified that she looked through the defendant's belongings, which he had deposited in their bedroom outside of her presence, and found a wallet containing the victim's driver's license and Price Club card, she was not describing a communication. While a spouse's conduct may convey information to the other spouse and would, therefore, be privileged under Code § 8.01-398, see Menefee, 189 Va. at 912, 55 S.E.2d at 15, a spouse's conduct which does not convey information to the other spouse is not privileged. Osborne v. Commonwealth, 214 Va. 691, 692, 204 S.E.2d 289, 290 (1974) (wife's testimony that husband had beaten her and daughter not privileged). The former wife's discovery of the contents of the wallet conveyed information to her, as did the fact that she discovered it among the defendant's belongings. However, the defendant's conduct -- leaving the wallet among his belongings -- was not observed by the former wife and did not convey information to her. Thus, the conduct was not a "communication privately made."

For these reasons, Code § 8.01-398 does not prohibit the former wife's testimony, and the trial court correctly allowed her to testify concerning these events. We, therefore, affirm the judgments of conviction.

Affirmed.