**May E. Bruesch, Defendant in Error, v. Prudential Insurance Company of America, Plaintiff in Error.**

**Gen. No. 36,631.**

MATCHETT, J., dissenting.

Opinion filed June 12, 1933.

HOYNE, O'CONNOR & RUBINKAM, for plaintiff in error.

JOSEPH H. HINSHAW, for defendant in error; OSWELL G. TREADWAY, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

May E. Bruesch, the beneficiary named in a life insurance policy issued to her husband July 13, 1925, by the defendant insurance company, brought suit to recover $5,000, the face of the policy. There was a verdict and judgment in her favor for $4,873.59, which was the face of the policy less $126.41, which sum her deceased husband in his lifetime had borrowed on the policy. The defendant appeals and contends that the policy had lapsed by reason of the failure to pay the quarterly premium of $33.85, which fell due July 13, 1930.

The record discloses that William Bruesch, plaintiff's husband, died March 21, 1931; that the last quarterly premium of $33.85 was paid May 14, 1930, which paid the premium up to July 13, 1930, and that nothing has been paid since that time. It further appears that William Bruesch borrowed $126.41 from the defendant insurance company on the policy.

Plaintiff, Mrs. Bruesch, gave testimony to the effect that a few weeks before her husband died she went to the agency of defendant and stated she had learned

that her husband, who was then very ill, had borrowed $126.41 on the policy and she desired to pay that indebtedness and tendered the money, but was advised by defendant's representative that the policy was "dead" because of the failure to pay the premium which became due July 13, 1930. On the other hand, John T. Birch testified that he had been employed by the Prudential Insurance Company for more than 24 years, that he knew Mr. and Mrs. Bruesch; that a few weeks before Bruesch's death Mrs. Bruesch called on him at the defendant's place of business, produced the policy and said she wanted it "revided"; that he told her the company would be glad to revive it but it was necessary for her to pay the unpaid premium; that shortly after Bruesch's death Mrs. Bruesch called on him and told him that Bruesch had died and wanted to know if the policy was of any value; that he replied he did not know but would endeavor to find out, but did not think the policy was of any value. William J. Krebs, another employee of the defendant company who was present when Mrs. Bruesch called to take the matter up with Birch, testified that he was cashier in the office of the Prudential Insurance Company and had been for more than eight years; that he saw Mrs. Bruesch about three weeks before her husband died; that Birch was present; that at that time Birch asked him if they could accept on behalf of the defendant partial or full payment of the amount of the loan on the policy, which had lapsed; that they told Mrs. Bruesch they did not think the policy was of any value at that time but would find out from the home office, and that Mrs. Bruesch did not at any time tender any money in payment of the premium or of the loan.

The question for decision is whether the policy had lapsed prior to Bruesch's death for failure to pay the premium which fell due July 13, 1930. The material provisions of the policy are as follows:

"If any premium be not paid when due, as specified on the first page hereof, this Policy shall be void and all premiums forfeited to the Company, except as herein provided. The payment of any premium shall not maintain the Policy in force beyond the date when the next payment becomes due, except as to the benefits provided for herein after default in premium payment.

"GRACE IN PAYMENT OF PREMIUMS.—In the payment of any premium under this Policy, except the first, a grace of thirty-one days without interest will be allowed, during which time the Policy will remain in force. . . .

"REINSTATEMENT.—If this Policy be lapsed for non-payment of premium it will be reinstated at any time after the date of lapse upon written application and payment of arrears of premiums with interest at the rate of five per cent per annum, together with the reinstatement of all indebtedness, provided such indebtedness be not greater than the loan value of this Policy at the time of application for such reinstatement, and provided evidence of the insurability of the Insured satisfactory to the Company be furnished. . . .

"LOAN PROVISIONS.—If this Policy be continued in force, the Insured may borrow from the Company, without the consent of the Beneficiary, if any, named herein, with interest at the rate of six per cent per annum, payable at the end of each policy year, on the sole security of this Policy, an amount up to the limit of the Cash Surrender Value hereinafter specified after deducting therefrom all other indebtedness on account of this Policy. . . . Failure to repay any such indebtedness or to pay interest shall not avoid the Policy unless the total indebtedness thereon to the Company shall equal or exceed the loan value at the time of such failure, nor until one month after notice to that effect shall have been mailed by the Company

to the last known address of the Insured, of the person to whom the loan was made. . . .

"Paid-up Life Policy.—If this Policy, after being in force three full years from its date, shall lapse or became forfeited for the non-payment of any premium on the date when due," . . . (Then follow other provisions not material here.)

"Automatic Extended Insurance.—If this Policy, having lapsed or become forfeited as specified in the clause, 'Paid-up Life Policy' above, be not surrendered for its Cash Value or for a Paid-up Life Policy, the Company will put in force in lieu of this Policy, *without any action on the part of the Insured,* a non-participating Paid-up Term Policy for the Face Amount of Insurance under this Policy with no provision for Disability or Accidental Death Benefits, the date of such Paid-up Term Policy to be the due date as specified on the first page hereof to which premiums on this Policy have been paid, and to continue in force for the term indicated in the following table; provided, however, that the Insured shall not have the right to borrow on such Policy and that if there be any indebtedness to the Company on account of this Policy the amount of such Paid-up Term Policy shall be the Face Amount of Insurance under this Policy less the amount of such indebtedness, with no provision for Disability or Accidental Death Benefits, and the term for which such Paid-up Term Policy shall run shall be changed to that term for which the Cash Surrender Value of this Policy herein specified, after deducting such indebtedness, will carry the modified amount at Single Premium Term rates."
Then follows the table referred to in the policy, which shows that a policy for $1,000 that has been in force five years, such as the one in question, has a cash surrender value of $31, and that if there is "Automatic Extended Insurance" as provided in the paragraph

last quoted, it will continue that kind of a policy in force for one year and 337 days.

From this it follows that the policy in question, being for $5,000 and being in force five years, would have a cash surrender value of $155, and if no premiums were paid after five years and there was no indebtedness of Bruesch, the insured, to the company the insurance would be automatically extended for the face of the policy, $5,000, for one year and 337 days from and after July 13, 1930, or until June 14, 1933. But in the instant case the evidence shows that there was an indebtedness of $126.41 against the policy. It appears from the evidence that no one but an actuary could tell the length of time the insurance would be automatically extended, and the testimony of the actuaries is to the effect that deducting the $126.41 from the cash surrender value of $155 leaves $28.59; that there was a dividend of $22.25 to be added to this, making $50.84, which is the amount available for premium to be applied for extended insurance. Witnesses testified that this sum would pay the premium on the policy in question for 241 days. Computing this period of 241 days from July 13, 1930, we find that the policy would be extended to March 11, 1931, so that the automatic extended insurance lapsed 10 days before Bruesch's death.

But plaintiff contends that even if it be conceded "that if the period of extended insurance was cut down by a loan on the policy, this period was governed by the loan provisions of the policy and could not expire until one month after notice to such effect had been given in accordance with these provisions, and, no notice having been given, the policy was still in force at the time of his death." In support of this counsel then quotes part of the "Loan Provisions," of the policy as follows: "Failure to repay any such indebtedness or to pay interest shall not avoid the

policy unless the total indebtedness thereon to the company shall equal or exceed the loan value at the time of such failure, nor until one month after notice to that effect shall have been mailed by the company to the last known address of the insured.'' We think this argument is unsound. In the instant case it is not claimed that the policy lapsed for the failure to pay the loan of $126.41, but for failure to pay the premium which became due July 13, 1930; and there is no provision in the policy that we have been able to find that requires any notice to the insured that the policy would lapse or be forfeited unless the premium is paid. The provisions of the policy in this respect are, we think, self-executing—that unless the premium is paid within 31 days after it becomes due, the policy automatically lapses.

Plaintiff further contends that since it was a question of fact for the jury to decide whether plaintiff had tendered the amount of the loan, as testified to by her, and the jury having found in her favor, ''the insured was entitled to extended insurance for a period long beyond the date of his death.'' The loan provision of the policy we have above quoted provides that in case money is borrowed by the insured on the policy, the loan is payable at the end of each policy year. No provision of the policy is pointed out—and we have been unable to find any—that would extend the life of the policy if the loan were tendered or even paid. The policy lapsed for the non-payment of the premium due July 13, 1930, and this not having been paid or an offer made to pay within the period of grace provided by the policy, the policy lapsed and could not be reinstated after it had lapsed unless there was evidence furnished to the company of the insurability of the insured; that is the express provision of the policy with reference to reinstatement which we have above quoted. It was not sought to reinstate the policy.

Furthermore, the evidence is that at the time plaintiff took the matter up with defendant's representative with a view of paying the loan, the insured was very ill and died a few weeks thereafter.

We think we ought to say here it is astounding that the representatives of the defendant company, to whom plaintiff went for information as to the policy, could give her no information; that no one could tell her what her rights were without applying to the home office. One of the men to whom she went had been employed by the defendant company for more than 24 years. Just why a policy of this character is so worded that no person but one in the home office could tell what it means, we are unable to understand. But we must pass on the evidence as it appears in the record before us.

Complaint is made by defendant that plaintiff was not a competent witness, and in support of this counsel say that when plaintiff testified she was the wife of the insured and that he died March 11, 1931, "They objected to any further testimony because it would be incompetent under sections 1 and 5 of the Evidence Act." We think this is a misapprehension of the law. If plaintiff was incompetent because she was the wife of the insured, it was not by virtue of any statute but by the common law. The statute only removed some of the common law disabilities of witnesses. *Schreffler v. Chase*, 245 Ill. 395. Under the common law plaintiff, being a party to the suit, could not testify. This disability was removed by section 1 of chapter 51, Cahill's 1931 Statutes. Section 5 of that chapter narrows the provisions of section 1, which permits a party to an action to testify by limiting the cases in which a husband and wife may testify for or against each other as to any transaction or conversation occurring during the marriage, whether called as a witness during the existence of a marriage or after its

dissolution, except of certain cases. But that section is not applicable here. Plaintiff was not testifying for or against her husband nor to any transaction or conversation which occurred during or after the marriage. She was testifying for herself alone. The policy was made payable to her and obviously she had a right to testify.

Since we hold the uncontradicted evidence shows that the policy lapsed for the non-payment of premium before the assured died, no recovery can be had on the policy, and the court should have directed a verdict at the close of all the evidence, as requested by defendant. In view of this holding, the objections made to certain instructions are unimportant. The judgment of the superior court of Cook county is reversed with a finding of fact.

*Judgment reversed with a finding of fact.*

McSURELY, P. J., concurs.

MATCHETT, J., dissents.

Finding of fact: We find as a fact that the policy sued on lapsed for the non-payment of dues prior to the date of the death of the insured.