Upon the trial at Martin, on the last circuit, before his Honor, JudgePearson, one Henry C. Whitley was offered as witness for the State, when the defendants counsel objected to his competency because he had been the husband of the defendant, Elizabeth, although it was admitted that they had since been divorced from the bonds of matrimony; and it was insisted for the defendants that he was not a competent witness as to any matter that took place before the divorce. The court overruled the objection, "thinking the matter about which he (the witness) was called to testify, to wit, the criminal intercourse of the defendants, did not, after the divorce, fall within the rule excluding confidential (109) communications, and all such facts as are known by reason of the peculiar confidence existing between man and wife."
The witness was examined and proved a criminal intercourse between the defendants before the separation of the witness from his wife, the defendant, Elizabeth, and for some time after that separation, but before the divorce.
His Honor charged the jury "that a single act of adultery was not indictable, but that if they were satisfied from the evidence that the *Page 87 
defendants had been guilty of criminal intercourse time after time, so as to make a practice of it, they should find them guilty." The counsel for the defendants then moved the court to instruct the jury that they ought not to convict unless the evidence satisfied them that the defendant, Jolly, or the defendant, Elizabeth, had taken the other into his or her house, and they had lived together in adultery. The court refused so to charge, but again instructed the jury "that it was not necessary for the parties to live together in the same house, provided they were satisfied that the parties were in the habit and made a continual practice of this adulterous intercourse."
A verdict of guilty was returned, when the counsel for the defendants moved for a new trial because the court had erred in receiving the testimony of the witness, Whitley, the former husband of the defendant, Elizabeth, and also in the charge to the jury. This motion was overruled. A motion was then made in arrest of judgment because the indictment charged simply a bedding and cohabiting together, without alleging that either of the defendants had taken the other into his or her house, and lived together, etc. This motion was also overruled, and the court fined the defendant, Jolly, two hundred dollars, and the defendant, Elizabeth, one dollar. From this judgment the defendant Jolly appealed.
Upon the trial of this indictment the former husband of the female defendant, who had been divorced from her by a regular judicial sentence, was introduced as a witness by the State, to (110) prove the adulterous intercourse between her and the appellant previously to the divorce. The counsel for the defendants objected to the witness as incompetent for this purpose, but the court being of opinion that the case did not come within the rule excluding testimony of confidential communications, and of such facts as are known by reason of the confidence between man and wife, admitted the testimony, whereupon the defendants were both convicted, and one of them, the male defendant, Jolly, appealed to this Court.
It has been objected on the part of the State that this appeal is irregular, for that although the sentence was several as to the fines imposed, it was joint as to the costs. We do not so understand it. The sentence is in law several in all respects; where the costs can be discriminated each is liable for his or her part of them, and where they cannot be each is liable for the whole. The judgment against each is to pay the fine and costs of prosecution. *Page 88 
The objection made to the witness would have been insuperable if at the time of the trial he had remained the husband of the female defendant. It is a rule, subject to very few exceptions arising from necessity, that a wife cannot be a witness for or against her husband, nor a husband for or against his wife, nor either for or against any person who is a party on the record, and in interest with such husband or wife. This rule is founded principally upon the identity of interest which the law creates between the married pair, and so far as it is based upon this principle, the rule ceases with the dissolution of the relation which made them two one flesh. But it is also founded on public policy, which seeks to render the relation not only one of intimate union, but of entire confidence and this policy makes it necessary that the disability to testify against each other should in part (at least) remain after the connection shall have been altogether severed. It would outrage propriety if the law were to require or permit communications made under the seal of marriage confidence to be published, to the injury or disgrace of the trusting party, after the marriage was dissolved. The law had invited confidence, and it should not permit this confidence to be violated (111) or betrayed. But it is not enough to throw protection over communications made in the spirit of confidence. The intimacy of the marriage union enables each to be a daily and almost constant witness of the conduct of the other; and thus in fact a confidence, reaching much farther than that of verbal communications, is forced upon each of the parties. What one may even desire to conceal from all human eyes and ears is thus almost unavoidably brought within the observation of the other. The confidence which the law thus extorts as well as that which it encourages, ought to be kept sacred, and therefore the husband and wife are not in general admissible to testify against each other as to any matters whichoccurred during the relation.
But it is argued by the Attorney-General that the criminal conduct testified to in this case was itself an outrageous violation of the marriage vow — a matter in respect to which confidence was not yielded by the wife, nor could have been asked by the husband — a wrong to him of which he had a right to complain, of which he had complained, and for which he had obtained redress by a final separation from his false partner, and it is therefore insisted that testimony as to conduct of this kind, occurring during the continuance of the marriage relation, ought not to fall within the general rule above stated. No decisions have been cited, either for the State or the prisoner, bearing directly upon this point. Indeed, most of the adjudications referred to in the argument in relation to the general rule itself are nisi prius
decisions, very briefly reported and not entirely reconcilable to each other. Monroe v. Twisleton, Peak's Evid, app'd, 91; Beveridge v. Mintor, 1 Car and P., 364 (11 E. *Page 89 
C. L. R., 421), and Doker v. Hasler, Ry. and M., 198 (21 E. C. L. R., 416). In this dearth of authority we must decide the question by a proper application of the principle of the rule.
We are not satisfied that the exception contended for is established by reasoning urged in its support. The rule we deem a valuable one, and we view with apprehension any exception having a tendency more or less direct to promote cunning, or to generate distrust, where the best interests of society require that perfect frankness and confidence ought to prevail. If one exception be sanctioned because from the (112) character of the criminal act imputed, the dissent of the witness from its commission must be presumed, others may follow where the like presumption will be entertained, although not perhaps with equal confidence — and there will be danger of our having no rule capable of general and steady application. Besides in the infinite variety of motives which operate on wayward and depraved beings, it may happen even in adultery that actual confidence is reposed in the party supposed to be most injured. The judicial records furnish instances in which the husband was the confidant of his wife's licentious amours. Cibber v. Sloper; Smith v. Allison, Buller N. P., 27. But, moreover, the rule is not founded exclusively upon an actual voluntary confidence reposed by one of the married pair in the other, but also upon the unavoidable confidence which the intimacy of the marriage state necessarily produces. It is safest, we think, to hold that whatever is known by reason of that intimacy should be regarded as knowledge confidentially acquired, and that neither should be allowed to divulge it to the danger or disgrace of the other.
In holding this doctrine we do not in the slightest degree impugn our decision in Hester v. Hester, 4 Dev., 228. The disclosure there authorized was of a matter which the former husband of the witness could not have wished to conceal, but must have desired to make known, and to make known through her if he found no other means of doing so.
It has been argued, however, that supposing the objection to the witness to be good, it was an objection personal to the wife, and as she has submitted to the judgment the appellant has no right to complain of the objection having been overruled. But we hold otherwise. The objection was made on the trial, and if well founded, the testimony offered should have been excluded. Non constat that there was any other testimony to establish the charge and if not the appellant has been unlawfully convicted. Besides we are of opinion that if the appellant had been solely on trial the testimony of the husband should not have been received. The crime charged is one in which the guilt of both was necessary to be shown, and we understand the prohibition of the husband to testify against his wife, and of the wife to testify against her (113) *Page 90 
husband, to apply not only when the testimony is offered to convict, but when its direct tendency is to criminate and degrade. King v. Inhabitantsof All Saint Worcester, 6 Man. and Sel., 194.
Our determination upon this point renders it unnecessary to examine the other question which was raised upon the judge's charge and which is also presented by the motion in arrest of judgment. But as we have no difficulties upon it, and to prevent future controversy we deem it proper to say that as we understand the law, the offense is sufficiently described by charging an unlawful "bedding and cohabiting together," and this charge is sufficiently made out by showing such an habitual surrender of the person of the one to the gratification of the other as usually takes place in the marriage state.
For the error in receiving the testimony of the former husband of the female defendant the judgment is to be reversed and venire de novo awarded.
PER CURIAM. Judgment reversed.
Cited: Gardner v. Kluttz, 53 N.C. 376; State v. Jones, 89 N.C. 561;State v. Brittain, 117 N.C. 786; State v. Raby, 121 N.C. 684.