[No. 31034.   Department Two.   January 6, 1950.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES J. ROBBINS, *Appellant*.[1]

[1]Reported in 213 P. (2d) 310.

*Geo. H. Crandell*, for appellant.

*Charles O. Carroll* and *Burton S. Robbins*, for respondent.

HAMLEY, J.—At his trial upon a charge of grand larceny involving the theft of an automobile, defendant sought to exclude the adverse testimony of his former wife. When unsuccessful in this, he sought to cross-examine her with respect to her interest or bias. He was not permitted to do so. He was convicted, and judgment and sentence were entered. He has appealed.

The only question presented on this appeal is whether the trial court erred in regard to either of these rulings.

We will first consider whether the testimony of appellant's former wife ought to have been excluded.

The state called twenty-two witnesses to prove the crime charged. Their combined testimony tended to show that appellant, James J. Robbins, alias James Driscoll, had stolen a 1942 Pontiac automobile belonging to Merle D. Cohn; had altered the motor number to correspond to that of another Pontiac automobile, owned by Ralph Alberthal, which had been totally wrecked; and had obtained a transfer of the title of the wrecked Pontiac to himself, under the name of James Driscoll, and subsequently from James Driscoll to

Jimmie J. Robbins. One of these witnesses, an employee of the state department of licenses, produced an application for a certificate of title for a Pontiac automobile, in which Ralph Alberthal was listed as the former owner and the motor number of the Alberthal automobile was given. This application was signed "James Driscoll, By (wife) Mrs. June Driscoll."

The state then called appellant's former wife, Mrs. Geraldine Milne, to testify regarding this application. Over the objection of appellant, Mrs. Milne testified that she married appellant in November, 1946 (she misspoke in giving the year as 1946—the record shows that the marriage license was issued on November 23, 1945); that she divorced him in June, 1948; that, in August, 1946, while appellant waited in the automobile for her, she went to an office in the County-City building, in Seattle, and applied for license plates and a certificate of title for a Pontiac automobile (identifying the application, which had been introduced in evidence, as the one she had filed); that she signed the application "James Driscoll, By (wife) Mrs. June Driscoll"; that Driscoll was not her real name, but was her father's name; that at this time she and "James Driscoll" did not live at the address given in the application; and that she did not know whether "James Driscoll" had ever acquired title to the automobile from Ralph Alberthal, named in the application as the former owner.

Whether this testimony was admissible depends upon the effect to be given to Rem. Rev. Stat., § 1214 [P.P.C. § 38-9], paragraph 1, reading as follows:

"A husband shall not be examined for or against his wife without the consent of the wife, nor a wife for or against her husband without the consent of the husband; *nor shall either, during marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during marriage.* But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other." (Italics ours.)

The testimony in question consists of a number of sep-

arate statements. Several of these can be dismissed from consideration, for the reason that they did not impart information which came to the witness by reason of any communication from her husband, but were facts at all times within her own knowledge. Of this kind was the testimony regarding the date of marriage and divorce; that "Driscoll" was not the true name of the witness; and that at the time of the transaction she and "James Driscoll" did not live at the address given in the application. The statement that the witness did not know whether Driscoll had acquired title to the automobile from Alberthal did not convey any information except her own lack of knowledge.

This leaves for consideration the admissibility of the statement that, while appellant waited in the automobile for her, the witness went to an office in the County-City building in Seattle and applied for license plates and a certificate of title for a Pontiac automobile, signing "James Driscoll, By (wife) Mrs. June Driscoll."

■ The statement that appellant was waiting outside in an automobile was testimony as to an act of the other spouse, as distinguished from testimony as to an oral or written communication. The privilege established by the statute does not ordinarily extend to testimony regarding the acts of the other spouse. Wigmore on Evidence (3d ed.), vol. VIII, § 2337. For example, in a prosecution for the crime of rape, a divorced wife was permitted to testify that, on a certain occasion, she discovered her then husband in the act of sexual intercourse with her daughter, the complaining witness. State v. Snyder, 84 Wash. 485, 147 Pac. 38. Likewise, in a murder prosecution, a wife was permitted to testify that she discovered her husband dumping some object into a hole in which the deceased's body was found. Smith v. State, 198 Ind. 156, 152 N. E. 803.

However, there are circumstances under which testimony as to an act of the other spouse is clearly protected by the statutory privilege. Where the act is one which would not have been done by one spouse in the presence of, or with the knowledge of, the other but for the confidence between

them by reason of the marital relation, testimony as to such act is inadmissible. See the very recent case of *Menefee v. Commonwealth,* 55 S. E. (2d) (Va.) 9, where the cases and authorities are discussed at length. The rule is stated as follows in 70 C. J. 388, Witnesses, § 520:

"The term 'communication,' within the meaning of the privileged communication rule, as to husband and wife should be given a liberal construction and is not confined to mere audible communications or conversations between the spouses, but embraces all facts which have come to his or her knowledge or under his or her observation in consequence or by reason of the confidence of the marital relation, and which but for the confidence growing out of it would not have been known. It includes knowledge communicated by an act, which would not have been done by one spouse in the presence of, or within the sight of, the other, but for the confidence between them by reason of the marital relation."

█ It might at first be supposed that appellant's act of waiting in an automobile in sight of all on a public thoroughfare, was not an act done in reliance upon the confidence established by the marital relation. He was apparently willing to be seen by the public, including acquaintances who might be passing by. The reason he was not afraid of being seen by the general public, however, was that it was unlikely that this would result in connecting appellant with the transaction then taking place inside the building. But his wife knew why he was waiting there, and was accordingly in a position to disclose appellant's connection with the transaction then in progress. It is obvious that he would not have waited in the automobile had he not relied upon the confidence between them by reason of the marital relation. The testimony of the witness as to appellant's act of waiting was accordingly inadmissible.

█ We reach a different conclusion with respect to the witness' testimony that she applied for license plates and a certificate of title. Disassociated from her further testimony that her husband was waiting outside in the car, her statement that she made this application was testimony concern-

ing witness' own act. It was not testimony as to a communication between husband and wife.

If the witness had testified that she was authorized by her husband to file the application, that would have been testimony as to a communication. But she did not do so. It is true that the application, which had already been placed in evidence by another witness, was signed "James Driscoll, By (wife) Mrs. June Driscoll," and that Mrs. Milne testified that she signed in that manner. From this the jury was undoubtedly expected to conclude, and may well have concluded, that Mrs. Milne was in fact authorized by her husband. But this would be a conclusion based upon an inference—not upon the witness' direct testimony. She did not testify as to the truth of any representation contained in the application.

■ We are not willing to extend the rule of privileged marital communications to the point where it is necessary to hold testimony as to a witness' own acts inadmissible if the jury might infer therefrom a communication between husband and wife.

We conclude that the trial court erred in admitting Mrs. Milne's testimony relative to appellant's act of waiting in the automobile. The remainder of her testimony was properly received.

The remaining question is whether the trial court erred in not permitting appellant, by cross-examination, to show bias and interest of this same witness. Upon cross-examination, Mrs. Milne stated that, when appellant was her husband, he had been in the army for approximately a year and a half. She further testified that she had started two divorce actions against him, once when he was in the army and once after he got out. She was then asked whether, during the time appellant was in the army, she had had a baby; and whether, when appellant returned from the army, he had found the witness living in an apartment with another man. The trial court sustained objections to both these questions.

In the absence of the jury, appellant then offered to prove that, while appellant was absent for a period of a year and

a half, the witness became pregnant; that when the first divorce action was ready for hearing, the witness had the proceeding postponed because of her pregnant condition; that when appellant came back from the army, he found the witness in an apartment living with another man; and that the "record in Judge Hoar's court will show the arrest and the disposition of this case." The trial court rejected this offer of proof.

Appellant contended at the trial and before this court that he should have been permitted, as a matter of right, to cross-examine the witness as to these matters, in view of Rem. Rev. Stat., § 1211 [P.P.C. § 38-3], the first clause of which reads as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility. . . ."

■ This is the so-called "dead man" statute, and is usually applied only in cases involving deceased persons, though not always so. See *Hanford v. Goehry*, 24 Wn. (2d) 859, 167 P. (2d) 678. The "interest" referred to in this statute, however, means a direct interest in the outcome of the litigation, the test being whether the witness will gain or lose by the direct legal operation and effect of the judgment. *In re Sloan's Estate*, 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N.S.) 960; *Walker v. Sieg*, 23 Wn. (2d) 552, 161 P. (2d) 542; *In re Tate's Estate*, 32 Wn. (2d) 252, 201 P. (2d) 182. The purpose of the cross-examination here in question was not to develop the existence of such an interest. Accordingly, the statute referred to above does not apply.

Appellant also argues that, independent of the statute, this cross-examination should have been permitted for the purpose of showing bias.

The governing principle with regard to cross-examination for the purpose of showing bias is stated in 58 Am. Jur., 386, Witnesses, § 715, as follows:

"It is competent, on cross-examination of a witness, to elicit facts which tend to show the bias, prejudice, or friend-

ship of the witness for the party for whom he testifies, and to show hostility toward the party against whom he is called. This is entirely distinct from impeachment, which is governed by its own rules of evidence. Cross-examination for this purpose *is a matter of right*, and the denial thereof may constitute reversible error. This is not a collateral or immaterial matter within the rule limiting cross-examination to matters relevant to the issue." (Italics ours.)

This court has recognized that such cross-examination is a matter of right. *Perry v. Centralia*, 50 Wash. 670, 97 Pac. 802. Where a party has been denied this right, we have not hesitated to reverse. *State v. Eaid*, 55 Wash. 302, 104 Pac. 275, 33 L. R. A. (N.S.) 946; *State v. Beaton*, 106 Wash. 423, 180 Pac. 146. This accords with the general practice throughout the country. 70 C. J. 958 *et seq.*, Witnesses, §§ 1165, 1170, 1171.

Where the right is not altogether denied, the scope or extent of cross-examination for the purpose of showing bias rests in the sound discretion of the trial court. *Williams v. Spokane Falls & Northern R. Co.*, 42 Wash. 597, 84 Pac. 1129; *State v. Henry*, 143 Wash. 39, 254 Pac. 460; *State v. Linden*, 171 Wash. 92, 17 P. (2d) 635; *State v. Temby*, 172 Wash. 131, 19 P. (2d) 661; *State v. Robinson*, 24 Wn. (2d) 909, 167 P. (2d) 986. It is generally recognized, however, that the inquiry is not strictly limited to the simple question of whether hostility exists, but that, within reasonable limits, the witness may be interrogated as to particular facts tending to show the nature and extent of the hostility. *State v. Henry, supra.*

The trial court, of course, may reject cross-examination, where the circumstances sought to be shown only remotely tend to show bias. *State v. Harmon*, 21 Wn. (2d) 581, 152 P. (2d) 314; 70 C. J. 948, Witnesses, § 1149. Likewise, unwarranted and unfounded reflections upon the veracity of the witness may be excluded, as where he is asked, without any basis for the inference, "How much have you been paid for the testimony here?" *Chapman v. Rose*, 135 Wash. 248, 237 Pac. 708. It has also been held that, where the jury is already well advised as to the nature and extent of hostility, the

court may, in its discretion, reject such cross-examination. 70 C. J. 990, Witnesses, § 1197.

■ The general credibility of a witness cannot be impeached by proof of particular acts of misconduct. *State v. Gaffney*, 151 Wash. 599, 276 Pac. 873, 65 A. L. R. 405; *State v. Thomas*, 8 Wn. (2d) 573, 113 P. (2d) 73. Here, however, the offered cross-examination was not so intended, but was for the purpose of showing that the witness was prejudiced against this particular appellant. The transaction out of which such bias or prejudice is asserted to spring happens to involve the alleged misconduct of the witness. But this should not deprive appellant of the opportunity of proving that transaction and resultant bias if he is otherwise entitled to do so.

■ We are of the view that, in rejecting the entire offer of proof as to appellant initiating a criminal prosecution against the witness, appellant was denied a substantial right of cross-examination. The circumstances sought to be developed on cross-examination would tend to show intense hostility far exceeding the bias or prejudice which may have been established by reason of the proven divorce proceedings.

It might be thought that the witness' testimony was of such a character that it would not be likely to be affected by any amount of bias or hostility shown to exist. We are not disposed to speculate as to this. Mrs. Milne was a key witness in a case based on circumstantial evidence. The jury was entitled to have the essential facts with respect to any matter bearing upon the weight to be attached to her testimony. We do not undertake to say how extensive a cross-examination should be permitted. This is to be determined by the trial court, in the exercise of a sound discretion. We do say that the offered cross-examination should not have been altogether rejected.

The judgment is reversed, with instruction to grant appellant a new trial.

ROBINSON, HILL, and MALLERY, JJ., concur.

SIMPSON, C. J., dissents.