Jasen, J.
Defendant Dudley was convicted, after trial by jury, of first degree murder for the killing of Alberta Mary Vella in 1949, and sentenced to life imprisonment. Prior to the trial, defendant and his wife had been convicted in Virginia of second degree murder for the death of their daughter, Carol Ann, by starvation and beatings. In April, 1961, following their arrest in Virginia for Carol Ann’s death, defendant’s wife gave the Virginia police a statement to the effect that she saw her husband kill a woman in Onondaga County, New York, in September or October, 1949. Dudley was shown his wife’s statement and informed of his constitutional rights. He then made a full and detailed confession admitting the murder and substantially corroborating his wife’s statement. Also, Dudley voluntarily marked on a map the location at which he disposed of Mrs. Vella’s body, and it was with the aid of this map that *413 her remains were discovered in 1963 some 14 years after her death.
Defendant’s admissions and confession were found voluntary at a Huntley hearing. At trial, a hearing was held out of the presence of the jury to determine whether certain communications by Dudley were made in reliance upon a confidential relationship with his wife. The trial court ruled that testimony by defendant’s wife was admissible since a confidential relationship did not in fact exist between defendant and his wife at the time of the crime.
The Appellate Division affirmed the conviction by a divided court. The majority held that defendant had not in fact relied upbn a confidential relationship to preserve the secrecy of his acts, while the dissenting Justices were of the opinion that defendant had conducted himself in reliance upon a confidential relationship with his wife.
Defendant’s principal arguments upon this appeal are that it was error to allow his wife to testify concerning confidential communications between them, and that his confession was inadmissible because it was “ sworn to before a judicial officer.”
Dudley concedes that his wife could properly testify concerning his acts and words while Mrs. Vella was conscious (People v. Ressler, 17 N Y 2d 174), but argues that his words and acts pertaining to the crime became confidential after Mrs. Vella became unconscious since no person except his wife was then present to witness the completion of his crime.
We conclude that the challenged portion of the wife’s testimony is admissible.
At common law, one spouse was not competent to testify against the other (see, generally, 8 Wigmore, Evidence [3d ed.Q, § 2333; Eichardson, Evidence [8th ed.], § 457; McCormick, Evidence [1954], § 82) due to the absolute privilege granted to each spouse. However, this rigid rule was modified by statute (former Penal Law, § 2445 [in effect at the time of the trial]) to provide that the communication must be confidential in order to be privileged. Certainly, not all communications between husband and wife are confidential (Poppe v. Poppe, 3 N Y 2d 312, 314-315; Parkhurst v. Berdell, 110 N. Y. 386.) Thus, the statutory privilege does not protect “ all the daily and *414 ordinary exchanges between the spouses, but merely those which would not have been made but for the absolute confidence in, and induced by, the marital relationship.” (People v. Melski, 10 N Y 2d 78, 80.) The statute embraces not only speech, but also knowledge derived from the observance of “ disclosive acts ” done in the presence or view of one spouse by the other; however, the acts must be confidential in order to be privileged. (People v. Melski, supra, at p. 80[1].)
Whether a communication is confidential, and, therefore, privileged, is a preliminary question of fact to be determined by the Trial Judge. (People v. Melski, supra, at p. 80; Poppe v. Poppe, supra, at p. 315.) Here, the record clearly supports the affirmed factual findings of the courts below that the Sets and words of defendant following the unconsciousness and death of his victim were not ‘ ‘ induced by ’ ’ his ‘ ‘ absolute confidence in ” the marital .relationship (People v. Melski, supra, at p. 80), and these findings are, therefore, binding upon this court. (People v. Leonti, 18 N Y 2d 384; People v. Stephen J. B., 23 N Y 2d 611.)
It appears from the record that defendant and his wife lived in an old car in the Bast Syracuse dump at the time of Mr,s. Vella’s murder in 1949. The couple supported themselves by scavenging from the dump. Mrs. Dudley testified at the hearing held out of the presence of the jury that her husband severely abused and mistreated their children, and failed to provide for his family. When Mrs. Dudley intervened to protect their children, defendant threatened and viciously beat her. She related that defendant beat their baby son in June, 1947, and refused to allow her to .seek medical help for the baby. The baby died two days later.[1] Mrs. Dudley explained that she lost most of her feeling for defendant after this tragedy, but continued to live with him and did not complain to anyone of defendant’s mistreatment because he constantly threatened her. There can be no doubt that the record fully supports the factual findings of the courts below that defendant held their *415 marriage together 'solely by fear and domination—and that no confidential relationship, therefore, existed between the spouses at the time of Mrs. Vella’s murder.
Even more significant, however, is the fact that defendant felt it necessary at the time of Mrs. Vella’s murder, and on the following day, to threaten to kill his wife if she disclosed what she had observed. This is strong evidence that defendant himself was not then relying upon any confidential relationship to preserve the secrecy of his acts and words, and is sufficient in itself to remove these communications from the protection of the privilege. (People v. Melski, supra, at p. 81, n. 2.)
Defendant also argues that admission of his confession constitutes reversible error because it was “ sworn to before a judicial officer.”
We have indicated our disapproval of “ the taking of or the swearing to [of] confessions before any judicial officer.” (People v. Oakley, 9 N T 2d 656, 657; People v. Warner, 9 N Y 2d 670; People v. Foley, 8 N Y 2d 153.) The signing of a confession before a judicial officer presents the danger that the prosecution may, during the course of the trial, take unfair advantage of the fact that the confession was signed before a judicial officer. Additionally, the taking or signing of a confession before a judicial officer during judicial proceedings before him can, under .some circumstances, amount to testimonial compulsion. (People v. Foley, supra.)
However, these dangers are not presented in this case. Defendant’s confession was taken and reduced to writing in a police station in Virginia. Defendant was then taken to the home of a Virginia Justice of the Peace where he signed his confession on the back end of an automobile. There was no judicial proceeding pending or contemplated before this Justice of the Peace so it cannot be said that there was any testimonial compulsion. The Justice of the Peace, in this case, acted solely as a notary public. Nor can it be said that the presence of the Virginia Justice of the Peace at the trial added trustworthiness or weight to the confession. There was no argument made during defense counsel’s summation concerning the veracity of the confession nor as to the issue of coercion. Moreover, the District Attorney made no reference in his remarks concerning *416 the manner in which the confession was signed. Under these circumstances, we conclude that the defendant has not been prejudiced by the manner in which his confession was signed.
Furthermore, this alleged error has not been preserved for review as no objection was made to the introduction of the confession on the grounds that it had been sworn to before a Justice of the Peace, nor was appropriate objection taken to the trial testimony of the Justice of the Peace. (People v. Boss, 21 N Y 2d 258.)
We have reviewed defendant’s other contentions and find them to be without merit.
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Ftjld and Judges Burke, Scileppi, Bergan, Keating and Breitel concur.
Judgment affirmed.

. Mrs. Dudley also testified that defendant caused the deaths of at least three more of their children (by starvation, beatings and other mistreatment. We do not consider these deaths in reviewing the evidence pertaining to the marital relationship at the time of the crime charged since these deaths occurred subsequent to Mrs. Vella’s murder.