376 S.E.2d 606

**STATE of West Virginia**

v.

**Andrew French ROBINSON.**

No. 17989.

Supreme Court of Appeals of
West Virginia.

Dec. 21, 1988.

Richard A. Bush, Bush & Trippel, Parkersburg, for appellant.

Jill Miles, Asst. Atty. Gen., for appellee.

McGRAW, Justice:

This is an appeal by the appellant, Andrew French Robinson, from his conviction in the Circuit Court of Ritchie County of two counts of manufacturing a controlled substance. The appellant's principal contention on appeal is that the trial court erred in allowing his former wife to testify at trial as to his conduct during their marriage. We agree, and we reverse the judgment of the circuit court.

The appellant and Barbara Bartz Robinson were married in 1976 and resided in Harrisville, Ritchie County. In February 1983, the couple were divorced. As part of the divorce settlement, Mrs. Robinson was granted title to the marital home, with a right of unlimited access to and use of an outbuilding[1] located on the property reserved to the appellant for a period of one year.

On May 27, 1983, police obtained Mrs. Robinson's consent to search the outbuilding and seized a quantity of marijuana plants found growing there. The appellant was subsequently indicted on separate charges of unlawful manufacture of a controlled substance, a felony, in 1981, 1982 and 1983 respectively. By agreement with the State, Mrs. Robinson was allowed to plead guilty to a lesser charge of possession of marijuana and was placed on probation.

Prior to trial, defense counsel filed a motion *in limine* to exclude as privileged marital communications any testimony by Mrs. Robinson concerning her conversations with the appellant or observations of his actions during the marriage. The trial court ruled that any oral communications between the appellant and the witness during the marriage were privileged and, therefore, inadmissible, but subsequently

---

1. The outbuilding, constructed by the appellant in 1980, contained a garage in which the appellant was restoring a car, a workshop which he used in his trade as an electrician, and a greenhouse.

allowed Mrs. Robinson to testify as to her observations of her husband's conduct and actions during that period.

The appellant's trial was conducted before a jury in the Circuit Court of Ritchie County in November 1983. Mrs. Robinson testified that she had observed the appellant watering, pruning and harvesting marijuana plants grown in the outbuilding in 1981 and 1982. Mrs. Robinson admitted that she alone had planted the marijuana seized by the police in May 1983, but testified that her former husband had offered advice and assistance in the cultivation of the 1983 marijuana crop and had announced his intention to take one-half of the harvest as his due. The appellant denied any involvement in the cultivation of the 1983 crop and stated that he had advised his former wife to destroy the plants. On cross-examination, however, the appellant admitted that he had planted, cultivated and harvested marijuana in the greenhouse in 1981 and 1982.

On November 9, 1983, the jury returned a verdict finding the appellant guilty of manufacturing marijuana in 1981 and 1982, but not guilty of manufacture of the 1983 crop. By order dated December 16, 1983, the trial court denied the appellant's motion to set aside the verdict and sentenced him to a term of 18 months' probation.

I.

The appellant's principal contention on appeal is that the testimony of his former wife as to her observations of his actions during the marriage should have been excluded by the trial court as privileged marital communications. The privilege against disclosure of confidential marital communications is embodied in W.Va.Code § 57–3–4 (1966):

Neither husband nor wife shall, without the consent of the other, be examined in any case as to any confidential communication made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage existed.

This provision represents a codification of the common-law rule excluding from evidence testimony of one spouse relating to confidential communications made by the other during the marriage.[2] *See White v. Perry,* 14 W.Va. 66 (1878); B. Jones, *Evidence* § 21:4 (6th ed.1972); 8 J. Wigmore, *Evidence* § 2333 (McNaughton Rev.1961).

We have recognized that not all marital communications are privileged.

"The essence of the privilege is to protect confidences only. This is inevitably required by the very nature of this class of privileges. The purpose is to insure subjectively the free and unrestrained secrecy of communication, divested of any apprehension of compulsory disclosure; and if the communication is not intended to be a secret one, the privilege has no application to it."

*Payne v. Payne,* 97 W.Va. 627, 651, 125 S.E. 818, 827 (1924), *quoting* 5 J. Wigmore, *Evidence* § 2336 (2d ed.1923). A communication is not confidential, and therefore not privileged, where it is made in the presence of a third party. *Nash v. Fidelity–Phenix Life Ins. Co.,* 106 W.Va. 672, 146 S.E. 726 (1929). Moreover, a communication which was not intended to be a confidence of matrimony, such as a threat not to allow the wife to return to the marital home if she left to visit a relative, has been held not to be within the protection of the marital privilege. *Fuller v. Fuller,* 100 W.Va. 309, 130 S.E. 270 (1925). Generally, however, communications made in private between husband and wife are presumed to be confidential until the contrary is shown. *Payne v. Payne, supra. See Blau v. United*

2. This privilege is separate and distinct from the privilege against adverse spousal testimony embodied in W.Va.Code § 57–3–3 (1966). The latter provision permits a defendant in a criminal proceeding to prevent any adverse testimony by his or her spouse, but is available only where the defendant and the witness are legally married at the time of the proceeding. The privilege asserted in this case prevents only the disclosure of confidential marital communications and survives the dissolution of the marriage. *State v. Evans,* 172 W.Va. 810, 816, 310 S.E.2d 877, 883 (1983).

*States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934).

The above-cited cases concerned conversations or oral statements made during the marriage. This Court has never decided whether the physical actions or conduct of a spouse may constitute "communications" within the meaning of W.Va.Code § 57–3–4. Indeed, we expressly left the question open in *State v. Evans,* 172 W.Va. 810, 287 S.E.2d 922 (1982).

Virginia, however, has addressed the issue. In *Menefee v. Commonwealth,* 189 Va. 900, 55 S.E.2d 9 (1949), a witness was permitted to testify at trial that when her then-husband returned home at about midnight on the night of a murder, armed robbery and theft of a safe, he had appeared "somewhat nervous" and had placed a pistol, later found to be the murder weapon, on the mantel. She further testified that she had subsequently observed her husband "messing with the lid" to the trunk of his car, later found to have been used in the robbery, and that she drove him several times around the area where the stolen safe was later found.

In interpreting a statute almost identical to W.Va.Code § 57–3–4,[3] the Virginia court reviewed the conflicting decisions in other jurisdictions and concluded:

> The weight of authority, and in our opinion, on principle, the better view, extends the privilege beyond mere utterances or written words. Inherent in the privilege is the fundamental purpose to protect from public exposure confidences of the marital relation.

> It is far better that occasional hardships be suffered and that crime sometimes go unpunished than to limit confidential communications between husband and wife to mere spoken or written words. That would render susceptible of and expose to public observation and knowledge all confidential conduct, transactions and acts not consisting of spoken or written words, which the continued tranquility, integrity and confidence of their intimate relation demands to be shielded and protected by the inviolate veil of the marital sanctuary. The purpose and security of the privilege would be partially and materially defeated and destroyed by any less inclusive interpretation of the language of the statute.

> It is difficult to formulate any rule by which various matters transpiring between spouses may be readily catalogued and correctly classified as "communications privately made". Yet, in our opinion, the immunity and ban of the statute applies to and includes all information or knowledge privately imparted and made known by one spouse to the other by virtue of and in consequence of the marital relation through conduct, acts, signs, and spoken or written words.

189 Va. at 911–912, 55 S.E.2d at 15. On this basis, the court ruled that all of Mrs. Menefee's testimony should have been excluded at trial and reversed the conviction. *See Osbourne v. Commonwealth,* 214 Va. 691, 204 S.E.2d 289 (1974).

A number of jurisdictions[4] have adhered to the same view, holding that in order to

---

**3.** Va.Code § 6212 [1942], the statute then in effect, provided:

Neither husband nor wife shall, without the consent of the other, be examined in any case as to any communication privately made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted.

The Virginia court had previously recognized that the word "privately" was synonymous with "confidentially". *See Menefee v. Commonwealth,* 189 Va. at 907, 55 S.E.2d at 13; *Thomas v. First National Bank of Danville,* 166 Va. 497, 186 S.E. 77 (1936). The Virginia privilege against disclosure of confidential marital communications is now embodied in Va.Code § 8.01–398 (1984 Replacement Vol.).

**4.** To some extent, the question of whether knowledge derived from the observation of a spouse's non-verbal conduct is included within the marital privilege depends on the wording of statutes in that regard. In some jurisdictions, the codified privilege against disclosure of confidential marital communications either expressly includes acts or conduct of a spouse or is broad enough to include anything that occurs in the course of the marital relation. *See* N.H.Rev.Stat.Ann. § 516:27 (1974 Replacement Vol.); Ohio Rev.Code Ann. § 2317.02(d)

give effect to the public policy behind the privilege, the term "communication" must be liberally construed to embrace "knowledge derived from the observance of disclosive acts done in the presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing." *People v. Daghita*, 299 N.Y. 194, 199, 86 N.E.2d 172, 174 (1949). *See Shepherd v. State*, 257 Ind. 229, 277 N.E.2d 165 (1971); *Gill v. Commonwealth*, 374 S.W.2d 848 (Ky.1964); *People v. Gessinger*, 238 Mich. 625, 214 N.W. 184 (1927) (Sharpe, C.J., concurring); *Whitehead v. Kirk*, 104 Miss. 776, 61 So. 737 (1913); *Commonwealth v. Clark*, 347 Pa.Super. 128, 500 A.2d 440 (1985), *appeal dismissed*, 516 Pa. 16, 531 A.2d 1108 (1987); *State v. Robbins*, 35 Wash.2d 389, 213 P.2d 310 (1950). *See generally*, 81 Am.Jur.2d *Witnesses* § 161 (1976); Annotation, *"Communications" within Testimonial Privilege of Confidential Communications between Husband and Wife as Including Knowledge Derived from Observation by One Spouse of Acts of Other Spouse*, 10 A.L.R.2d 1389 (1950). The rationale behind this view was perhaps most eloquently stated in *State v. Jolly*, 20 N.C. 108 (1838):

> [I]t is not enough to throw protection over *communications* made in the spirit of confidence. The intimacy of the marriage union enables each to be a daily and almost constant witness of the *conduct* of the other; and, thus, in fact, a confidence reaching much farther than that of verbal communications is forced upon each of the parties. What one may even desire to conceal from all human eyes and ears is thus almost unavoidably brought within the observation of the other. The confidence which the law thus *extorts* as well as that which it *encourages*, ought to be kept sacred, and, therefore, the husband and wife are not, in general, admissible to testify

against each other as to any *matters* which *occurred* during the relation.

\* \* \* \* \* \*

> [T]he rule is not founded exclusively upon an actual voluntary confidence reposed by one of the married pair in the other, but also upon the unavoidable confidence which the intimacy of the marriage state necessarily produces. It is safest, we think, to hold that whatever is known by reason of that intimacy should be regarded as knowledge confidentially acquired, and that neither should be allowed to divulge it to the danger or disgrace of the other. (Emphasis in original.)

20 N.C. at 110–112. *See also State v. Alford*, 274 N.C. 125, 161 S.E.2d 575 (1968).

■ We are persuaded by this reasoning. It is consistent with the view of the marital privilege previously expressed by this Court with respect to oral communications. *See Fuller v. Fuller, supra; Payne v. Payne, supra.* Accordingly, we hold that the privilege against disclosure of confidential marital communications embodied in W.Va.Code § 57–3–4 (1966) prohibits disclosure of knowledge derived from observation of the acts or conduct of one's spouse undertaken or performed in reliance on the confidence of the marital relation.

■ The test of whether acts of a spouse come within the privilege against disclosure of confidential marital communications under this approach is whether the act or conduct was induced by or done in reliance on the confidence of the marital relation, i.e., whether there was an expectation of confidentiality. *See Arnold v. State*, 353 So.2d 524 (Ala.1977); *Shepherd v. State, supra; People v. Wilson*, 64 N.Y.2d 634, 485 N.Y.S.2d 40, 474 N.E.2d 248 (1984); *People v. McCormack*, 278 App.Div. 191, 104 N.Y.S.2d 139 (1951), *aff'd* 303 N.Y. 782, 103 N.E.2d 895 (1952); *State v. Freeman*, 302 N.C. 591, 276 S.E.2d 450 (1981); *State v. Robbins, supra*. Thus, the

(Anderson 1987 Cum.Supp.); Tenn.Code Ann. § 24–1–201 (1980 Replacement Vol.). However, most statutes, including those of the jurisdictions discussed herein, refer to the privilege

simply as encompassing "communications." *See People v. Simpson*, 39 Ill.App.3d 661, 350 N.E.2d 517 (1976), *citing* C. McCormick, *Evidence*, p. 168 (2d ed.1972).

privilege has been held not to apply where the defendant spouse conceals or attempts to conceal his actions from the witness spouse, *State v. Smith*, 198 Ind. 156, 152 N.E. 803 (1926); attempts to secure the silence of the witness spouse through threats or violence, *People v. Dudley*, 24 N.Y.2d 410, 301 N.Y.S.2d 9, 248 N.E.2d 860 (1969); acts without knowledge that the witness spouse has observed or was likely to observe his conduct, *People v. Fuentes*, 51 Misc.2d 354, 273 N.Y.S.2d 321 (1966); or commits the act in public or in the presence of a third person, *People v. McCormack, supra; State v. Freeman, supra.* In such circumstances, the act or conduct is held not to have been undertaken in reliance on the confidence of the marital relation.

■ Here, it appears that the actions of the appellant about which Mrs. Robinson testified at trial were observed by her alone in the privacy of their home or the outbuilding. There is no evidence that the appellant was unaware that his wife was observing him or that he made any attempt to conceal his actions. In view of the unlawful nature of those actions, they must be deemed to have been undertaken in reliance on the confidentiality of the marital relation. Accordingly, we conclude that the circuit court erred in allowing the testimony, and we reverse the convictions.

## II.

■ We also conclude that the trial court erred in allowing the appellant to testify at trial. At the close of the State's case, defense counsel advised the court, *in camera*, that the appellant had been informed of his right against self-incrimination and desired to take the stand, but wished to limit his testimony to events that occurred after the 1983 divorce. After a discussion concerning the scope of cross-examination, the trial court ruled that the prosecution could inquire into any matter relevant to the charges in the indictment. The trial judge did not, however, advise the appellant of his right to testify or to remain silent or of the consequences of waiver of those rights. The appellant subsequently took the stand and, after unsuccessfully asserting his constitutional right against self-incrimination, admitted his involvement in the cultivation of the 1981 and 1982 marijuana crops.

■ This Court has recently held that the trial court must take steps to insure that a criminal defendant's decision to testify at trial is knowingly, voluntarily and intelligently made.

A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

Syllabus point 7, *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988). The failure of the trial judge here to advise the appellant, *in camera* and on the record, of his rights and of the effect of waiver in that regard was reversible error.

## III.

In view of our resolution of these issues, we need not address the remainder of the appellant's assignments of error. For the reasons stated herein, the judgment of the Circuit Court of Ritchie County is reversed, and the case is remanded to that court for such further proceedings as may be necessary.

**REVERSED AND REMANDED.**