391 S.E.2d 354

**STATE of West Virginia**

v.

**Charles Edgar RICHARDS.**

No. 18994.

Supreme Court of Appeals of
West Virginia.

March 22, 1990.

John S. Folio, George F. Fordham, Clarksburg, for Charles Edgar Richards.

Roger W. Tompkins, Atty. Gen., C. Terry Owen, S. Asst. Atty. Gen., Charleston, for State of W.Va.

PER CURIAM:

Charles Edgar Richards appeals from a jury verdict in the Circuit Court of Harrison County finding him guilty of murder in the second degree and sentencing him to the State Penitentiary for a period of not less than five (5) nor more than eighteen (18) years. On appeal Mr. Richards argues that he was denied fair trial because (1) he was not afforded twenty (20) jurors free from exception, (2) certain blood stained clothing and slides of the victim were shown to the jury, and (3) his former wife was permitted to testify. We find no merit in his allegations and affirm his conviction.

Shortly after 7 p.m. on October 19, 1986, David R. Yoak was shot and killed by Mr. Richards in the Eastview area of Harrison County. Earlier in the day and again, immediately before the shooting, both men visited Regina Richards, Mr. Richards' estranged wife, at her mobile home. After a heated exchange with his wife, Mr. Richards with a borrowed shotgun drove to the vicinity of Mr. Yoak's home and waited in

his car.[1] Mr. Yoak left his home, and went to meet Mr. Richards. Both men got out of their cars and walked toward each other. Mr. Richards was carrying a shotgun and Mr. Yoak was unarmed. When the men were about 3 to 4 feet apart, the shotgun held by Mr. Richards discharged killing Mr. Yoak. There were two eye witnesses to the shooting. Two other witnesses testified that they heard the shotgun discharge and turned to see Mr. Richards holding a shotgun as Mr. Yoak fell. Mr. Richards contends that the shooting was either accidental or in self defense.

## I

Mr. Richard's first assignment of error alleges that he was not afforded twenty (20) jurors free from exception. Specifically Mr. Richards argues Cicilia Fugo Wilcox should have been excused because of her husband's relationship to the victim.[2] After the initial questioning, the trial judge questioned Mrs. Wilcox.

> Judge: Well, I want to put in a question here. From your husband's friendship with him and what he has told you about the case, do you think this would very seriously affect your attitude during the trial? Do you think that these would be factors that would affect your decision?
> A: No, I don't think so. I would just listen to it and make up my own mind.

▉ In Syllabus Point 5, *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983), we stated:

> "Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they enter-

tain bias or prejudice for or against either party, requiring their excuse." Syllabus Point 3, *State v. Pratt*, [161] W.Va. [530], 244 S.E.2d 227 (1978).

The record indicates that after Ms. Wilcox indicated a possible prejudice, the trial judge questioned her. Ms. Wilcox answered that she would listen to the evidence and make up her own mind.[3] In Syllabus Point 3, *State v. Brown*, 177 W.Va. 633, 355 S.E.2d 614 (1987), we reiterated our basic test to determine juror qualification.

> " 'The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instruction of the court.' Syl. pt. 1, *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974)." *State v. Wade*, [174] W.Va. [381], 327 S.E.2d 142 (1985).

*See State v. Bennett*, 181 W.Va. 269, 382 S.E.2d 322 (1989); *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706, 719 (1988) *cert. denied*, 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988).

We find that the trial court's determination not to excuse Ms. Wilcox based on her answer to his question does not constitute an abuse of discretion.

## II

▉ Mr. Richards's second and third assignments of error allege that gruesome clothing and photographic slides, without probative value, were introduced into evidence thereby resulting in manifest injustice and prejudice to Mr. Richards's right to a fair trial. The only clothing introduced into evidence was the victim's blood stained shirt containing a hole made by the shot-

---

1. Mrs. Richards testified that during the argument Mr. Richards said, "[Y]ou and David are dead." Mr. Richards denied making the statement.

2. Mrs. Wilcox testified that her husband knew the victim, talked to him on the street and went to the funeral home. The following exchange took place when Mrs. Wilcox was asked about the possible effect of her husband's friendship:

> Q. Okay, do you think by your husband being that close to him that it could possibly

have some effect on your ability to impartially judge the case?
> A. I think so....
> Q. As a result of that, are you fixed in your opinion about this case? Have you made up your mind to the guilt or innocence of Mr. Richards?
> A. No.
> Q. Still open in your mind?
> A. A little bit, yea, I would say.

3. Ms. Wilcox was not selected to sit on the jury and did not participate in any deliberations.

gun pellets.[4] The pattern of powder residue on the shirt indicated that the shotgun was fired "between thirty-five and fourty-five [sic] inches away from the ... shirt." In addition the blood on the shirt was identified as Mr. Yoak's.

Rule 403 of the *W.Va. Rules of Evidence* [1985] states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Mr. Richards argues that the victim's shirt is without probative value given the defense theory of accidental shooting or self-defense. However, the State was attempting to prove murder and the shirt is proper evidence to show the location of the wound and the distance between the shotgun and the victim. In *State v. Atwell,* 109 W.Va. 257, 153 S.E. 583, 584 (1930), we allowed the victim's shirt to be introduced even though it lacked powder marks stating:

The shirt was at least proper evidence to demonstrate the location of the wounds....

Mr. Richards also alleges that color photographic slides of the victim taken prior to an autopsy were prejudicial. In an *in camera* hearing, the trial judge viewed the slides to be offered by the State and limited the slides to those necessary for identification and to depict the wound and location. In Syllabus Point 6, *State v. Sette,* 161 W.Va. 384, 242 S.E.2d 464 (1978), we stated:

"While photographs may, as a general rule, be introduced in evidence to depict scenes material to some issue therein, whether a particular photograph, or groups of photographs, should be admitted in evidence, rest in the sound discretion of the trial court; and its rulings thereon will be upheld unless there is a clear showing that its discretion has been abused." Point 4, syllabus, *State v.*

*Wooldridge,* 129 W.Va. 448, 40 S.E.2d 899 (1946).

In *Sette,* the photographs admitted into evidence showed the dead victim and the area surrounding the room where she was murdered. We examined the photographs and concluded that they were not "overwhelmingly gruesome" (*Id.* 161 W.Va. at 396, 242 S.E.2d at 472.) and noted with that an "accused could not expect less than a full disclosure of the consequences of his conduct." *Id.* n. 4. *See* Syllabus Point 2, *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978) (admission of photographic evidence rests in sound discretion of the trial court); *State v. Plumley,* 181 W.Va. 685, 384 S.E.2d 130 (1989).

In Syllabus Point 5, *State v. Harper,* 179 W.Va. 24, 365 S.E.2d 69 (1987), we stated:

"In order for photographs to come within our gruesome photograph rule established in *State v. Rowe,* [163] W.Va. [593], 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome." Syl. pt. 6, *State v. Buck,* [170] W.Va. [428], 294 S.E.2d 281 (1982).

In the present case, we examined the slides shown briefly to the jury in connection with the autopsy report, and agree with the trial judge that they are not gruesome. *See State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979) (numerous close up, color photographs of the dead victim's battered face deemed gruesome); *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980) (numerous color photographs of two decapitated bodies that had been buried for 90 days in a forest grave deemed gruesome). We find that the trial judge did not abuse his discretion in ruling that the photographic slides were "highly relevant and not particularly gruesome."

### III

Mr. Richards's final assignment of error contends that testimony of his former wife contained certain confidential matters that were privileged under *W.Va. Code,* 57-3-4 [1923]. Although Mr. and Mrs. Richards were married on October 19, 1986, a di-

---

**4.** Although Mr. Richards alleges that the victim's shirt and underwear were introduced into evidence, only the victim's shirt, a "white thermal wear union suit," was introduced.

vorce had been granted in February 1987. Mrs. Richards testified that Mr. Richards had threatened to kill her and Mr. Yoak.[5] Her testimony came in rebuttal after Mr. Richards denied making any threats.

■ *W.Va. Code,* 57–3–4 [1923] prohibits testimony by one spouse, without the consent of the other, about confidential communication exchanged during the marriage. *W.Va. Code,* 57–3–4 [1923] states:

> Neither husband nor wife shall, without the consent of the other, be examined in any case as to any confidential communication made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage existed.

*W.Va. Code,* 57–3–4 [1923] is derived from the common-law rule excluding the testimony by one spouse concerning confidential communications exchanged during a marriage without the consent of the other spouse.[6] The privilege prevents only the disclosure of confidential martial communication and survives the dissolution of the marriage. *Evans II, supra* note 6, 172 W.Va. at 815, 310 S.E.2d at 883; *State v. Robinson,* 180 W.Va. 400, 376 S.E.2d 606 (1988).

■ Not all martial communication, either act, conduct or verbal, is considered confidential; only confidences, communications intended to be secret, are protected by the privilege. *Payne v. Payne,* 97 W.Va. 627, 125 S.E. 818, 827 (1924). In Syllabus Point 1, *State v. Robinson,* 180 W.Va. 400, 376 S.E.2d 606 (1988), we held that the privilege included "acts or conduct of one's spouse undertaken or performed in reliance on the confidence of the marital relation." In Syllabus Point 2, *State v. Robinson,* 180 W.Va. 400, 376 S.E.2d 606 (1988), we stated:

> The test of whether the acts of the spouse come within the privilege against disclosure of confidential marital communications is whether the act or conduct was induced by or done in reliance on the confidence of the marital relation, i.e., whether there was an expectation of confidentiality.

■ A communication made in the presence of a third party is done without an expectation of confidentiality and is not secret and not privileged. *Nash v. Fidelity–Phenix Fire Ins. Co.,* 106 W.Va. 672, 146 S.E. 726 (1929) (The wife's testimony about the husband's threat to burn his store was properly excluded, but testimony by a third party who overheard the confidential communication was admissible.).

We have long recognized that the privilege does not extend to threats made by one spouse against the other spouse. In *Fuller v. Fuller,* 100 W.Va. 309, 130 S.E. 270 (1925), the husband threatened not to allow the wife to return to the marital home if she stayed with her sister in order to recover from childbirth. We refused to exclude the wife's testimony on the grounds of a marital confidential communication privilege by holding:

> The threat by the defendant in this conversation, which gives color to his subsequent acts and conduct, was made in disregard of the marriage relation, and was not intended to be a communication in the confidence of matrimony. Its disclosure by her violates no confidence imposed upon plaintiff as a wife.

*Id.* 100 W.Va. at 312–13, 130 S.E. at 271. *See Robinson* 180 W.Va. at 402, 376 S.E.2d at 608. In Syllabus Point 1, *Evans I, su-*

---

5. After an *in camera* hearing, the trial judge permitted the following limited testimony from Mrs. Richards:

> Q: Yeah, the 19th day of October 1986. I just want you to recall it in your mind, okay and say nothing. Alright. At the time that Charles Richards was at your trailer on that date at around 6:40, what threats if any did he make against you or David Yoak?
> A: He said that you and David are dead.
> Q: Any other threats?
> A: No. He hit me but.
> Q: No, Just tell me the threats.

> A: No, he just said that you and David are dead.

6. *W.Va. Code,* 57–3–3 [1923] concerns a separate and distinct privilege that prevents any adverse testimony by a spouse without the consent of the other spouse except in certain cases. *State v. Evans,* 170 W.Va. 3, 287 S.E.2d 922 (1982) [hereinafter *Evans I*]. However, once the marital relationship is terminated, *W.Va. Code,* 57–3–3 [1923] is not applicable. *State v. Evans,* 172 W.Va. 810, 310 S.E.2d 877 (1983) [hereinafter *Evans II*].

*pra* note 6, we recognized the statutory exception in *W.Va. Code,* 57–3–3 [1923] for certain cases of domestic violence from the privilege against adverse spousal testimony. Although generally marital communications made in private are presumed to be confidential, threats made by one spouse against the other have not been considered privileged because threats are not made in the confidence of matrimony.

In *Evans II, supra* note 6, 172 W.Va. at 815, 310 S.E.2d at 883 n. 7, we held that the testimony by a former wife of what she heard outside a mobile home when a fatal shooting was occurring did not reveal any privileged confidential communication because it lacked "the touchstones of privacy and confidentiality...."

█ In the present case, the testimony of Mr. Richards's former wife was limited to his statement threatening both his wife and the victim. The record indicates that threat was part of a loud argument heard by witnesses several mobile homes away. Mr. Richards' threat is not privileged because it was not induced by or done in reliance on the confidence of the marital relation and lacks the touchstones of privacy and confidentiality.

For the above stated reasons, we affirm the judgment of the Circuit Court of Harrison County.

Affirmed.